## Wormer & Sons v. The Waterloo Agricultural Works et al.

1. **Promissory Note: BONA FIDE HOLDER: CORPORATION.** Where a note executed by a corporation was subsequently indorsed by the payee without recourse, the consideration therefor never having been paid, and it then came into the possession of the secretary of the company, who in turn negotiated it for value before maturity, it was *held* that the party taking it from the secretary was entitled to protection as a *bona fide* holder.

2. ———: **EXTENSION OF TIME.** The granting of an extension of time is a sufficient consideration to uphold a note which has been obtained and negotiated in fraud of the maker.

*Appeal from Black Hawk District Court.*

FRIDAY, DECEMBER 13.

ACTION to foreclose a mortgage. The plaintiffs claim to be the owners of a certain promissory note executed by the defendant, the Waterloo Agricultural Works, for three thousand dollars, and of a mortgage executed to secure the same upon certain real estate. The plaintiffs received the note as collateral security from one McCall, who was at the time secretary of the defendant company. McCall claimed to be the owner. The company denies that the note was ever rightfully delivered to him, or to any other person. Other facts are stated in the opinion. Judgment for defendants. Plaintiffs appeal.

*Boies & Couch,* for appellants.

*J. L. Husted* and *Alford & Elwell,* for appellees.

ADAMS, J.—The note was executed payable· to the order of one Edmund Miller. Negotiations had been had with him by the defendant company, for the purpose of obtaining a loan of money from him. The note. was one of eight notes drawn for three thousand dollars each. At the time they were executed it was expected

<small>1. PROMISSORY note: bona fide holder: corporation.</small>

that Miller would take them. The negotiations with Miller, however, failed, and as the notes had been executed payable to his order he indorsed them in these words: "Without recourse to me. Edmund Miller." McCall then agreed with the treasurer of the company to take the note in suit, and he gave therefor his own notes amounting to two thousand dollars, and pledged the note in suit before maturity to the plaintiffs, for an antecedent debt, procuring an extension of time by reason of giving such security.

The question presented is as to whether the plaintiffs acquired a good title to the note. The note is negotiable, and they claim to be *bona fide* holders. In *Central Bank of Brooklyn v. Hammett,* 50 N. Y. 158, the *bona fide* holder of a negotiable note is defined to be "one who has acquired title in good faith, for a valuable consideration, from one capable of transferring it, or from one in the possession of paper with an apparent right to transfer it, and without notice of any defect in his title or right to transfer." The appellants claim, however, that McCall did not acquire a good title, and that the plaintiffs took the note from him with notice. They took the note with notice, of course, of whatever appeared on its face. Now it is said that it appeared on the face of the note that McCall was the secretary of the company. While, then, he held the note, it is said he should have been regarded as holding it as the secretary of the company, as the fact really was. The appellants cite *Claflin et al. v. Farmers' & Citizens' Bank of L. I.,* 25 N. Y. 293. In that case the plaintiff sought to recover upon a check drawn, certified and negotiated by the president of the defendant bank for his own benefit. The plaintiffs claimed to be *bona fide* holders, but the court held otherwise.

The doctrine of that case is, we think, not applicable to the case at bar. The note was made payable to the order of Edmund Miller, and by him indorsed. The presumption arising from the face of the note and indorsement was that the note had been negotiated to Miller, and by him trans-

ferred. This certainly must be so unless the presumption is rebutted by the character of the indorsement, together with the fact that the note might be regarded as in the hands of the company when in the hands of its secretary. The indorsement was without recourse. While this is consistent with the fact that the negotiation with Miller had simply failed, yet looking at the indorsement alone that would not be the inference. Where the person named as payee in a note fails to take the note, the more proper course, ordinarily, and we think the most usual course, is for the maker to suppress the note, and not take an indorsement of it from the payee. Nor do we think that the appellant's theory is supported to any great extent by the fact that McCall was the secretary of the company. He claimed to hold the note in his own right, and every circumstance known to the plaintiffs was consistent with such claim. We cannot say that there was a lack of prudence upon their part in not questioning the claim. It is certainly common enough for the officers of a corporation to purchase its paper. We are of the opinion, then, that the plaintiffs are *bona fide* holders, and entitled to recover to the extent of the debt for which the note was pledged.

The defendant pleads usury, but we omit to pass upon the question. Most of the essential facts touching the plea of usury are similar to those in the case of Pond against this defendant, decided at this term. There must be usury, we think, if McCall's title to the note were valid. We are inclined to think it was not, and that there is no usury; but McCall is not a party to this action, and we leave the question undetermined.

REVERSED.

OPINION ON REHEARING.

ADAMS, J.—The evidence in this case tends strongly to show that McCall acquired no title to the note. We are inclined to think that such is the fact, and that, in procuring the note from defendants' treasurer and transferring it to the plaintiffs,

he perpetrated a fraud upon the defendants. In the opinion filed the plaintiffs' rights were made to depend wholly upon the fact that they appeared to have acquired the note before maturity, for a valuable consideration, and without notice. The correctness of the rule of law upon which the decision was based we do not understand to be questioned; but the defendants deny that the plaintiffs acquired the note for a valuable consideration, and deny that they acquired it without notice of the defects of McCall's title. They maintain that the burden of proof is on the plaintiffs to show that they gave value and took the note without notice, and they insist that the plaintiffs have failed to show either fact. As to the burden of proof in such a case the defendants are correct, nor does the opinion hold otherwise. The note in question was taken as collateral to a past-due note made by McCall, and the alleged consideration is the extension of McCall's note. The defendants deny that there was any consideration, upon two grounds: In the first place, they say that the evidence fails to show any agreement for an extension; and, in the second place, they claim that the extension, if given, would not, in law, constitute a consideration.

The fact of the extension was testified to by one of the plaintiffs in these words: "Plaintiffs agreed with McCall to extend the time of the payment of said note. The terms were to extend the payment of the two thousand dollar McCall note until the three thousand dollar note in suit came due. The agreement was verbal, through Howe, and by correspondence between me and McCall." The defendants insist that this is insufficient; that Howe's testimony should have been taken and the correspondence should have been produced. Whether the witness knew what Howe did in such a way that he could properly testify to it may admit of some doubt, but it is not for us to say he did not. As to the correspondence it is sufficient to say that secondary evidence is admissible unless it is objected to. These propositions, indeed, we do not understand to be seriously questioned. But it is insisted

Wormer & Sons v. The Waterloo Agricultural Works.

that the fact that Howe's testimony was not taken and the correspondence not produced, taken in connection with other suspicious circumstances, is sufficient to destroy the witness' credibility. On this point we have to say that we have all read the evidence separately, and have all failed to reach this conclusion.

The same witness states that the note was acquired without notice of defects, and the suspicious circumstances urged as overcoming the evidence, we think, are not sufficient.

That an extension was given, we think, is proven. We come, then, to consider whether it constituted a considera-

2. ——: ——: tion. We are unable to conclude that it did not.
extension of time. It is quite possible that the plaintiffs lost nothing by the extension. It would be so if McCall were solvent at the expiration of the extension; or if, during the time of extension, nothing could have been collected of him. But the granting of extension was the waiver of the right to enforce immediate payment. That is a sufficient consideration to uphold an ordinary contract, and we think it sufficient to uphold a note where it has been obtained and negotiated in fraud of the maker. It is conceded by defendants that McCall is insolvent. But they insist that the plaintiffs should show something more than the granting of extension; they insist that they should show a positive loss by doing it. But it might not be practicable to show it, even if it were sustained. The chances of collecting something from an insolvent debtor, if vigorously pursued, are better than the chances of showing what could have been collected where he is not pursued.

The defendants say that if the rule in this case is correct corporations are at the mercy of their officers. Corporations, like natural persons, are at the mercy of every one who has the disposition and opportunity to steal their negotiable paper and put it in circulation. But the importance of protecting them is not such as to justify the adoption of a rule which would go far to impair the peculiar value of such paper derived from its negotiability.

As to whether the plaintiffs should not have inferred from the fact that McCall's name was attached to this note as secretary, that he held it as secretary, or in some way as the property of the company, some of us have entertained great doubt. We have accordingly carefully examined the able argument and the authorities presented in the petition for a rehearing, but we have to say that the conclusion heretofore reached through much hesitation remains unchanged.

The defendants insist that the evidence shows usury. If the defendants made a usurious contract they made it with McCall. But they insist, and in this we think they are correct, that they made no contract with him of any kind.

We think that the petition for a rehearing must be overruled.