WORMER & SON v. THE WATERLOO AGRICULTURAL WORKS ET AL.

1. **Subrogation:** WHO ENTITLED TO: RULE STATED AND APPLIED. A person may be subrogated to the rights of a creditor, in the absence of any contract or understanding, when he is surety, and pays the debt for his own protection, or when he is a junior lien-holder, and pays the senior lien for his own protection. But where a person is in no manner bound, and on his own motion, in the absence of a contract or expectation that he will be substituted in the place of the creditor, pays the debt, he will be regarded as an intermeddler, and not entitled to subrogation.(See authorities cited by Seevers, J.) Accordingly *held,* under the facts of this case, (see opinion,) where intervenor furnished the money to redeem from a judicial sale, that he was not entitled to be subrogated to the rights of the purchaser at the sale.

| 62 | 699 |
| 86 | 435 |
| 62 | 699 |
| 111 | 205 |
| 62 | 699 |
| 112 | 557 |
| 62 | 699 |
| 124 | 591 |
| 62 | 699 |
| 128 | 6 |

*Appeal from Black Hawk District Court.*

FRIDAY, DECEMBER 14, 1882.

ACTION to foreclose a mortgage executed by the defendant

corporation. Robert Waller intervened, and seeks to have established a lien prior to that of the mortgage. The court found and entered judgment for the intervenor, and the plaintiff alone appeals.

*Boies & Couch,* for appellant.

*Graham & Cady,* for intervenor.

SEEVERS, CH. J.—As against the defendant, it was held in 50 Iowa, 262, that the plaintiff was entitled to a foreclosure of the mortgage. Two days prior to the *procedendo* being filed in the district court, Robert Waller intervened in the action by filing a petition, in which he claimed that the plaintiffs' mortgage was junior to certain liens or interests he had in and to the mortgaged premises. The material facts upon which such claim is based are as follows: The premises had been sold under executions issued on judgments establishing mechanics' liens thereon. These liens were prior to that of the mortgage, and one Bayless was the purchaser at the execution sale. The defendant's right of redemption expired in June, 1875. The right of creditors, including the plaintiffs, to redeem had expired prior to that time. Unless, therefore, redemption was made by or in the interest of the defendant, the premises would be conveyed by the sheriff to Bayless, and the interest of the plaintiffs under the mortgage, as well as that of defendant, would be cut off, and Bayless would become the absolute owner of the premises.

A day or two prior to that on which the right to redeem expired, one Ackley, president of the defendant, and acting for it, applied to one Cain, an agent of the defendant at Dubuque, for a loan to redeem the property from the sale to Bayless. Ackley represented, or caused Cain to understand, that Bayless would assign the certificate of purchase upon being paid the amount required to redeem. But it was regarded as doubtful, for want of time, if this could be accomplished, as Bayless was a non-resident. Redemption had to be made

in Black Hawk county, and the conclusion at Dubuque was that Cain should go to Waterloo prepared to and to make redemption, if he saw proper. Ackley and Cain reached Waterloo about 7 o'clock in the evening, and redemption, if made at all, had to be made before midnight. Ackley made efforts to see the attorneys acting for Bayless, but failed to do so, and it was then certainly developed that the certificate of purchase would not be assigned to the intervenor, if he advanced the money required to redeem. Cain, therefore, determined to make statutory redemption in the name of the defendant, and did so upon Ackley's promise to give what security he could, and it was agreed that he should execute to the intervenor a mortgage on the same premises upon which plaintiffs' mortgage was a lien, and assign certain judgments which he held against the defendant. On cross-examination, the following questions were asked Cain: "Well, did you in effect or in substance agree with him, (Ackley,) before you made a deposit of the money, that you would advance the money and take a mortgage upon the property of the Agricultural Works, provided you failed to get an assignment of the certificate of the sale from Bayless?" He replied: "Well, that was about the understanding." He was further asked: "And that was before you made the deposit, was it?" He replied: "Yes, sir." The mortgage under which the plaintiff claims was executed in 1873, and duly filed for record and recorded. Besides this, Cain had express notice of the mortgage, but Ackley informed him that in his opinion it could not be enforced, except it was possible it could be to the extent of one of the notes secured thereby, and, as we understand, the plniniffs are now seeking to foreclose for said note. Ackley, during the negotiation as to the security to be given the intervenor, said to Cain that, if the collection of the note was enforced by a foreclosure of the mortgage, it would lessen the intervenor's security "to that extent, but that the works would be ample security."

When Ackley came to execute the mortgage, it was as-

certained that he did not have the authority to execute it, but that the power to sell the premises had been conferred upon him as president of the corporation. Whereupon he executed for and in behalf of the defendant a conveyance of the mortgaged premises to the intervenor. This conveyance is absolute on its face, and contains the following provision: that it was made "subject to any and all legal claims against said premises."

The intervenor insists that he in equity should be subrogated to the rights of Bayless. That, as the lien of the latter was prior to the mortgage, he should be adjudged to be the owner thereof, and that it retain its priority in his hands to the extent of the money advanced to redeem. He contends that "subrogation does not depend upon contract, but rests upon the principles of justice and equity." Many authorities have been cited by counsel in support of their respective theories. In the view we take of the case, we do not feel called upon to determine with any degree of exactness the rule as to subrogation. But, from a somewhat careful examination of the authorities cited, we incline to think a person may be subrogated to the rights of another in the absence of any contract or understanding, where he is a surety, and pays the debt for his own protection, or where he is a junior lien holder, and pays the senior lien for his protection. In such cases he cannot be regarded as an intermeddler, because as a surety he is bound for the debt, and as a junior lien holder he has an interest in preserving and protecting the common property. But where a person is in no manner bound, and on his own motion, in the absence of a contract, or expectation that he will be substituted in the place of the creditor, pays the debt, he will be regarded as an intermeddler, and not entitled to subrogation. *Shinn v. Budd*, 14 N. J. Eq., 234; *Coe v. Railway Co.*, 31 Id., 105 (136); *Building Association v. Thompson*, 32, Id., 133; *Ketchell v. Mudgett*, 37 Mich., 81; *Gilbert v. Gilbert*, 39 Iowa, 657; *Barber v. Lyon*, 15 Id., 37.

The difficulty which lies in the intervenor's path is that he got all he contracted for or expected to get when he advanced the money and redeemed from Bayless. It is true that, in the first instance, the intervenor expected Bayless would assign the certificates of purchase upon being paid the amount required to redeem. But, when he advanced the money and made redemption, he knew the certificate of purchase could not. be obtained, and he then contracted for a mortgage and certain other securities. The money, therefore, was not advanced under the belief or expectation that by so doing the intervenor would obtain all or any of the rights of Bayless. When the intervenor advanced the money under the belief that a mortgage would be executed to secure him, he was under no legal obligation to make the redemption. He did not see proper to advance the money and take his chances that he could, by so doing, be subrogated in the place and obtain the rights of Bayless, but stipulated what security he should receive. However broad the equities may be in favor of the intervenor, we cannot make a new contract for him, nor establish equities in his favor, when he did not rely thereon, and in effect made a. contract for the security he should receive if he made the advancement. The stipulation in the deed strongly tends to show that Cain made the advancement with the expectation of paying the mortgage, or at least so much of it as could be enforced. He knew of the mortgage, and took the conveyance subject thereto. It seems to us that it would be inequitable now to say that the intervenor has a lien or right superior to the mortgage.

At the time the premises were conveyed to the intervenor, there were taxes due thereon, and we believe he has paid subsequent taxes, and also those then due. There had been established, also, a mechanics' lien in favor of Moore & Company on the real estate, or a building thereon—there is some dispute as to which. This lien has become the property of the intervenor, and was superior to the mortgage on the real estate, or a building thereon. The district court determined

that for the taxes and the Moore & Company lien the inter-
venor was entitled to priority over the mortgage. We think
this is correct, and do not deem it necessary to extend this
opinion by stating our reasons; and this portion of the decree
below is affirmed. But so much of the decree as gives the
intervenor a lien prior to the mortgage for the money ad-
vanced to redeem the premises from Bayless is

REVERSED.