## NORTHERN DEPARTMENT—WESTERN DIVISION.
## FEBRUARY TERM, 1896.

THE TRADERS BANK v. WILLIS G. MYERS *et al.*
### No. 3.

MORTGAGE — *Subrogation — no Actual Knowledge of Second Mortgage.* Where a mortgage is taken upon land with the understanding that it shall be a first lien thereon, and that the money to be loaned on the same is to be applied by the mortgagee to the payment and discharge of a prior incumbrance on the same land, and it is so applied, such mortgagee will be subrogated to the rights of the prior incumbrancer whose debt was so discharged, when it is equitable to do so, although there was, before the discharge of such prior incumbrance, a second mortgage on the land of which the subsequent mortgagee had no actual knowledge or notice.

MEMORANDUM.—Error from Phillips district court; LOUIS K. PRATT, judge. Action by Willis G. Myers against The Traders Bank and others to foreclose a mortgage and asking subrogation. Judgment for plaintiff. Defendant bank brings the case to this court. Affirmed. The opinion herein was filed April 1, 1896.

The statement of the case, as made by GILKESON, P. J., is as follows :

On the 1st day of October, 1881, William B. Ferguson was the owner in fee simple of the southwest quarter of section 23, township 4 south, of range 17 west of the sixth principal meridian, Phillips county, Kansas, and being so seized, Ferguson and wife executed their mortgage of that date upon said land, thereby conveying the same to one H. J. Cameron to secure the payment of a note for $700, due in five years after

date, which mortgage was duly recorded on the 31st day of October, 1881, and on the 18th day of November, 1881, was assigned by said Cameron to the Scottish-American Mortgage Company (Limited).   The assignment was duly recorded on the 22d day of November, 1881.   On the 27th day of July, 1883, Ferguson and wife conveyed by warranty deed the said land to one J. L. Stevens ; said deed was duly recorded on the 1st day of August, 1883.   Subsequently thereto said Stevens and wife conveyed the said land by quitclaim deed to Ruth J. Ferguson, the wife of said William B. Ferguson.   Afterward, on the 5th day of July, 1884, Ruth Ferguson and her husband, conveyed the said land by warranty deed to Oliver B. Moore and Henry M. Stehman.   This deed was duly recorded December 20, 1884.   August 25, 1885, Oliver B. Moore and his wife and said Henry M. Stehman executed a mortgage upon the said land to the Traders Bank, plaintiff in error, to secure the sum of $1,000 and interest.   This mortgage was filed for record September 4, 1885.   October 25, 1886, Moore and wife and Stehman executed their deed of trust upon said land to Edward E. Holmes, trustee for Willis G. Myers, defendant in error.   This mortgage was filed for record November 23, 1886, and was given to secure the sum of $700.

November 26, 1886, the mortgage first mentioned, from Ferguson and wife to Cameron, and assigned to the Scottish-American Mortgage Company, was released of record in the office of the register of deeds of Phillips county, Kansas.   At the time of the making of the trust deed sought to be foreclosed in this action, O. B. Moore, one of the parties thereto, made a written application to the Kansas City Investment

Company, of Kansas City, Mo., for a loan of $700, the material parts of which are as follows:

"Amount of loan wanted is $700, for the term of five years. For the purpose of canceling a mortgage held by this company. The security offered is described as follows: All of the southeast quarter of section 23, township 4 south, range 17 west of the sixth P. M., containing 160 acres, being 160 acres in Deer Creek township, Phillips county, Kansas, located 4½ miles from Kirwin, the nearest railroad station on the C. B. U. P. railroad. I intend making the following improvements within the next year: Build an addition to the house. I own other real estate, as follows: 160 acres joining this on the west, and 160 acres 80 rods north, which is incumbered by $700. The title to this property is vested in Oliver B. Moore and wife, and H. M. Stehman, unmarried. Title as shown in this abstract accompanying this application has never been disputed or called in question. There is no other than the applicant in possession of any part of the land under color of title except this rental. This property is incumbered in no way by mortgage, unpaid taxes, judgments, suits pending, or liens of any kind, except as follows: $700 to the K. C. Investment Company. There are no unrecorded deeds or mortgages affecting the title to this property. I agree to pay all expenses incurred in examining the premises above referred to, and the title thereto, if the security should not be as represented, or should I fail to accept the loan if granted, and if I obtain the above loan I will, if required, insure my buildings for the benefit of and to the satisfaction of the mortgagee; and I understand that the loan hereby applied for is made upon the representations as to said premises and title to the same made by me in this application, and I do solemnly declare that the said representations are true in every particular."

It was signed by O. B. Moore, and sworn to on the 22d day of October, 1886, before a notary public. The agent of the company, a Mr. Robinson, called upon

Mr. Moore, examined this land, and prepared the papers for the loan. At this time it was agreed between the parties, Robinson and Moore, that an old abstract, the one given with the first mortgage, which was then somewhere in the eastern part of the United States, would be accepted, and that no new abstract need be made. Mr. Robinson did not examine the record to ascertain the condition of this title. After the papers were made and the agent, Robinson, had returned to Beloit, Kan., his headquarters, he sent the deed of trust sued upon in this case, and a second mortgage for commissions on the loan, by mail, to the register of deeds at Phillipsburg, Kan. The letter of transmittal is as follows:

" I send you herewith deed of trust and second mortgage for record. O. B. Moore & Co. Please return, with your bill, and advise us whether there is anything on record since our old mortgage. We will send abstract for completion as soon as received from the east."

In reply to this inquiry, the register of deeds stated that there was nothing of record between the old and their new mortgage. Relying upon this and Moore's statement, the loan was consummated and the money applied to the payment and satisfaction of said first mortgage, which was at the time a valid, subsisting lien on the land, superior to the mortgage lien of plaintiff in error.

Some months after this Robinson sent the abstract to the register of deeds of Phillips county, Kansas, to be brought down to date, and at the same time filed the satisfaction of the Scottish-American Mortgage Company. The abstract, as then brought down, did not show the mortgage of the Traders Bank. About two years afterward he sent the abstract again to the register of deeds of Phillips county for the purpose of

having the proceedings in a certain case then pending for the quieting of title to this land placed thereon, and at this time the register of deeds made the abstract show the mortgage of the Traders Bank.

On the 28th day of May, 1889, Willis G. Myers, the defendant in error, commenced this action in the district court of Phillips county, Kansas, to foreclose the deed of trust executed by Moore and wife and Stehman to the trustee, Edward E. Holmes, alleging, among other things, that this trust deed was given to secure a loan of $700 negotiated through the Kansas City Investment Company as the agent of Myers; that the purpose of said loan was to pay off a prior mortgage of the same amount on the same land, said prior mortgage having been made by Ferguson and wife to H. J. Cameron, and by him assigned to the Scottish-American Mortgage Company (Limited), of which the Kansas City Investment Company was also the agent; that it was understood and agreed that Myers's mortgage should be and constitute (when the Cameron mortgage was paid off) a first mortgage lien upon the land; that an abstract of title was procured in the making of said loan, but that by a mistake of the abstracter (the register of deeds) an intervening mortgage to the plaintiff in error was omitted from the abstract; that, relying upon the representations of the mortgagors and upon the abstract and information obtained from the register of deeds, the loan company, after having placed the Myers mortgage on record, paid the Scottish-American Mortgage Company for the mortgage assigned to it by Cameron out of the money loaned by Myers, and released the same of record; that such payment and release would never have been procured or made had the existence of the mortgage to the Traders Bank, defendant in

error, been in fact known to the plaintiff or to the loan company, and prayed judgment that the said release be canceled and that he be subrogated to the rights and liens of the Scottish-American Mortgage Company (Limited), and for other relief.

The plaintiff in error filed an answer denying the right of Willis G. Myers to be subrogated to the lien of the Scottish-American Mortgage Company (Limited), and further alleged that the said O. B. Moore and wife and H. M. Stehman, at the time of the making of their mortgage to the Traders Bank, agreed to pay off the prior mortgage, the one assigned to the Scottish-American Mortgage Company (Limited), and make the Traders Bank mortgage the first lien upon the real estate, and that had it not been for such an agreement the Traders Bank would never have made the loan of $1,000, nor taken a mortgage on said land.

On the 10th of September, 1889, this action was tried to the court, a jury being waived. The court made special findings of fact, as follows:

"1. Did O. B. Moore agree with the defendant, the Traders Bank, to pay off the mortgage of the Scottish-American Mortgage Company (Limited), and thus make the mortgage of the Traders Bank a first lien upon the land described? Ans. Yes.

"2. Was said agreement made at the time of the execution of the said Traders Bank mortgage as an inducement to said Traders Bank to take and accept the same as security for the amount of money therein set forth? A. Made at the time of executing the mortgage to the Traders Bank and as one of the inducements.

"3. Did the defendant, the Traders Bank, at any time agree with O. B. Moore to release the mortgage of record, and thus permit the mortgage of plaintiff.

sued on in this cause to become a first lien on said land described in plaintiff's petition?  A.  No.

"4.  Did the Traders Bank extend the time of payment of its note because this defendant procured the release of the Scottish-American Mortgage Company? A.  No."

The Traders Bank, plaintiff in error, defendant below, thereupon filed its motion for judgment in its favor upon the special findings of fact, which was overruled by the court, and thereupon judgment was rendered in favor of Willis G. Myers, defendant in error, canceling the release of the said Scottish-American Mortgage Company, and subrogating him to the rights of said mortgage company.  Motion for new trial was filed and overruled, and the Traders Bank brings the case here for review.

*C. A. Lewis*, for plaintiff in error.

*Cook & Gossett*, and *G. A. Spaulding*, for defendants in error, Willis G. Myers and Edward E. Holmes.

The opinion of the court was delivered by

GILKESON, P. J.: The principle which governs in all cases of subrogation is one of equity merely, and is to be carried out in the exercise of an equitable discretion, with due regard to the legal and equitable rights of others, and, being a purely equitable right, it ought to be denied in all cases where its exercise would produce injustice.  Mr. Justice VALENTINE says:

"It always requires something more than the mere payment of the debt in order to entitle the person paying the same to be substituted in the place of the original creditor.  It requires an assignment, legal or equitable, from the original creditor, or an agreement or understanding on the part of the party liable to pay the debt that the person furnishing the money

to pay the same shall in effect become the creditor, or the person furnishing the money must furnish the same either because he is liable as surety, or liable in some other secondary character, or for the purpose of saving or protecting some right or interest, or supposed right or interest, of his own. But the right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon principles of natural justice." (*Crippen v. Chappel*, 35 Kan. 499.)

And Mr. Chancellor Johnson, in *Gadsden v. Brown*, Spears's Eq. (S. C.) 37, 41, says:

"The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice, and from its very nature could never have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound; and, so far as I have been able to learn its history, it never has been so applied. If one with the perfect knowledge of the facts will part with his money, or bind himself by his contract in a sufficient consideration, any rule of law which would restore him his money or absolve him from his contract would subvert the rules of social order. It has been directed in its application exclusively to the relief of those that were already bound who could not but choose to abide the penalty. But I have seen no case, and none has been referred to in the argument, in which a stranger, who was in a condition to make terms for himself and demand any security he might require, has been protected by the principle."

Mr. Justice Miller, citing the above in *Ætna Life Ins. Co. v. Middleport*, 124 U. S. 534, says: "This is perhaps as clear a statement of the doctrine on this subject as is to be found anywhere."

"Subrogation is a matter of right, as it exists in the civil law, from which the term has been borrowed

and adopted in our own, is never applied to a mere volunteer." (*Shinn v. Budd*, 14 N. J. Eq. 234.)

The supreme court of Illinois, in *Suppiger v. Garrels*, 20 Bradw. 625, states the rule :

" Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove one which is superior ; any one who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer."

The supreme court of Wisconsin, in *Watson v. Wilcox*, 39 Wis. 643, says :

" One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling the mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself be subrogated to the rights of the mortgagee therein."

Chief Justice Ryan, in this case, says :

" We know of no case that has ever carried the doctrine of subrogation so far as to hold that a mere loan of money, for the purpose of enabling the borrower to pay a debt, entitled the lender to be subrogated to the rights of the creditor whose debt was thus paid."

But where a person is in no manner bound, and on his own motion, in the absence of contract or expectation that he may be substituted in the place of a creditor, pays the debt, he will be regarded as an intermeddler and not entitled to subrogation. (*Shinn v. Budd*, 14 N. J. Eq. 234 ; *Coe v. Railway Co.*, 31 id. 136 ; *Building Association v. Thompson*, 32 id. 133 ; *Kitchell v. Mudgett*, 37 Mich. 81 ; *Gilbert v. Gilbert*, 39 Iowa, 657 ; *Wormer v. Agricultural Works*, 62 id. 699.)

The doctrine of subrogation, in equity, requires : (1) That the person seeking its benefit must have paid the debt due to a third party before he can be

substituted to that party's rights; (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the other person to whom he pays the debt. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another. (*Ætna Life Ins. Co. v. Middleport*, 124 U. S. 534.)

It would seem therefore, from the authorities, that a claim for subrogation, to be successful, must arise from the payment of a debt from legal or moral obligations or interest, and must be equitable and work no injustice or hardship. Let us apply the doctrine thus laid down to the case at bar. Was there any *contract* or *expectation* of subrogation when this trust deed was made? We can best answer this by repeating the allegations of the petition: That at the time of the making of said loan the applicant, Moore, represented to the Kansas City Investment Company that the lands were in no way incumbered, except by the mortgage mentioned in the application; that the company sent an abstract to the register of deeds (prior to putting the release on record) and by accident, inadvertence and mistake the register of deeds failed to enter on said abstract the record of the mortgage to the Traders Bank, and that neither plaintiff nor the Kansas City Investment Company had any actual notice or knowledge thereof, and were wholly ignorant and uninformed thereof, and relied upon the statement and representations of said Moore; that said release and satisfaction of the same would not otherwise have been made and obtained, and plaintiff would not have paid out and loaned the money as aforesaid for said purpose.

How, then, can it be said that there was a contract or expectation of subrogation with reference to that

which was totally unknown to them, and of which they allege, if they had known, they would not have made the loan. While it is true that Moore testified as to his recollection, and what he understood, yet the party making the loan — the agent who transacted the business — is silent upon this proposition, and the understanding of one of the parties does not make a contract.

The case was tried upon the theory that plaintiff was entitled to subrogation on account of the mistake of the register and the misrepresentations of the applicant. Testimony was offered, and its introduction was insisted upon, for the express purpose of showing "that the plaintiff below had been diligent, and had been induced to make this loan by the fraud and deceit of Moore, and that the Traders Bank could not take advantage or keep to its advantage what was procured through Moore's fraud." No claim was ever made for subrogation on the ground of having paid this claim, or upon any equitable right known to or recognized by the doctrine of subrogation. Under what obligation was the plaintiff to pay this debt? What interest did he have to protect? None. He was in a position to make this loan or not, just as he chose, and the payment in this case was a voluntary interference. If he had not made the loan and thereby paid off this mortgage, but stood off and allowed the parties to work out their own relations to each other, he would have suffered no loss or harm. There was no obligation on account of which or reason why the plaintiff should have connected himself in any way with this transaction, except the ordinary desire on the part of his agent to make a profit out of the transaction, viz., the $70 commission which he did make, as shown by the second mortgage given therefor. But

it is contended by the plaintiff below that on account of the neglect of the register of deeds, and the misrepresentations of the applicant, he was entitled to be subrogated, and that the rights of the Traders Bank are to be totally ignored by reason of this neglect and fraud to which it was not a party, and is not shown to have ever known of, and contends that he had no actual notice or knowledge of the existence of this mortgage.

Paragraph 1128, General Statutes of 1889, provides :

"Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, proved, or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of the register of deeds of the county in which such real estate is situated."

Paragraph 1129 :

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof ; *and all subsequent purchasers and mortgagees* shall be deemed to purchase with notice."

He is therefore to be considered as having acted with full knowledge of the facts.

The trial court seems to have taken the view that the only rights to be considered in this case were those of the plaintiff, and to have ignored the principle which governs all cases of subrogation — "that it is one of equity, and is to be carried out in the exercise of an equitable discretion, with due regard to the legal and equitable rights of others." Yet it specially found "that O. B. Moore ( the applicant ) agreed with the Traders Bank to pay off this mortgage ( that the plaintiff below paid ) and make their mortgage a first lien, and that this agreement was made at the time

the said bank made Moore the loan and as one of the inducements therefor:"

We have failed to discover, either from the record, the brief of counsel for defendant in error, or on authority, why the rights of the Traders Bank should be ignored. It had complied with the law in all respects; its mortgage is not questioned; while the plaintiff has been guilty of neglect that cannot be justified under any pretext, by not examining the records of the county as a prudent man should, and by law he is required to do or act at his peril; and as he chose to rely upon the register of deeds and the statements made in the application he should be compelled to stand by his own acts.

The supreme court of Iowa, in a case not as strong as this, *Building Association v. Scott*, 53 N. W. Rep. 283, held:

" One who loans money to satisfy several mortgages on property, and takes another mortgage on the property without examining the records, and relying merely on an abstract not entered up to date, which fails to notice the rendition of a recent judgment, is not entitled to subrogation under said mortgages to rights paramount to the judgment."

In passing upon this question that court says:

" The loan was made upon the understanding and agreement that the money loaned should be applied to the satisfaction of said mortgages. The money loaned was so applied, and the mortgages canceled and satisfied. The purpose of this agreement was manifestly that the plaintiff's mortgage might be a first lien. . . . There is no evidence that the plaintiff had any actual knowledge of the action or judgment, but the records were such as to impart a constructive notice thereof. By the satisfaction of the said three mortgages the defendant's judgment became a first lien, unless, under the law and the facts in

the case, the plaintiff is entitled to be subrogated to
the rights of the mortgagees in said three prior mort-
gages.   Plaintiff's contention is that, as it furnished
the money with which said mortgages were paid, under
an agreement that it should be so applied, it is entitled
to have the satisfaction of said mortgages canceled,
and be subrogated to all the rights of the mortgagees.
The right to subrogation rests upon equitable ground
and is never granted as a reward for negligence.
While it may be true that no equities inhere in de-
fendant's lien, that it is simply a lien given by law, it
is certainly as true that the plaintiff's claim is equally
void of equities.   The position of the plaintiff is the
result of its own negligence.   It relied upon an abstract
of title which was not brought up to date, and which
failed to note the pendency of the defendant's suit or
the judgment in his favor.

"An examination of the court records on the day
the day the loan was made would have informed
plaintiff of the existence of this judgment, and that
it was a lien upon these lots, whether owned by both
or either of the Baehrings.   Without making this
examination, which the most ordinary care required,
plaintiff made the loan and accepted its mortgage.
Surely equity will not reward such negligence by ap-
plying the doctrine of subrogation in favor of the neg-
ligent party.   To do so would encourage carelessness
in taking such security.   The language used in *Mather
v. Jenswold*, 72 Iowa, 550, is directly applicable, and
decisive of this question : ' The only question in the
case is whether the plaintiff is entitled to have the
satisfaction of Simmons's mortgage set aside, and that
he be subrogated to all the rights of Simmons.   It
seems to us that he is not entitled to such relief.   The
plaintiff made the loan to Lord for the express purpose
of paying the Simmons mortgage.   It was well under-
stood that the plaintiff was to accept a new mortgage,
and plaintiff got all he bargained for.   There was no
mistake except that the plaintiff failed to exercise the
diligence required in the examination of the records,
and therefore failed to discover the existence of the

judgment and the sale thereunder. No one can be blamed, but he must suffer loss, simply because he was negligent. There is no principle that will allow him to .take advantage of that to the injury of the diligent.' ( *Wormer v. Agricultural·Works,* 62 Iowa, 699 ; *Weidner. v. Thompson,* 69 id. 39.)''

The law as thus given has always been enforced where intervening incumbrances occur. And the supreme court of this state has followed this rule in *Everston v. Central Bank,* 33 Kan. 352, with respect to money advanced on defective mortgages :

'' Where money is loaned upon the security of what is supposed to be a valid mortgage, but which in fact is a forged and void mortgage, and the money is loaned for the purpose that a prior valid mortgage may be discharged, which is done, the mortgagee of the void mortgage may be subrogated to the rights of the prior mortgagee, *there being no intervening liens or . incumbrances.*''

I am clearly of the opinion that the judgment should be reversed — that the plaintiff below is not entitled to be subrogated. As was said by the supreme court of Iowa, *supra,* he got all he bargained for — a mortgage ; the agent, all he was working for — the $70 commission. If he did not get a first mortgage, no one can be blamed but himself. He must suffer on account of his negligence. There is no principle that will allow him to take advantage of his own wrong to the injury of the innocent party. .

The majority of the court, however, differ with me in these views of this case. They are of the opinion that the equities are sufficiently strong to entitle the defendant in error to be subrogated to the first lien on the premises, which his money paid and discharged ; that the plaintiff in error, so far as the prior mortgage was concerned, relied entirely upon the promise of

Moore that it should be discharged out of the $1,000 loan, and took its mortgage knowing that it was a second lien and subject to the first-mortgage lien of of $700; that the defendant in error cannot be said to have been culpably negligent in relying upon the statement of Moore and of the register of deeds that there was no other lien; and that, by subrogating Myers to the lien of the first mortgage, both plaintiff and defendant in error are placed in no worse situation than they were before. They are of the opinion that Myers cannot be held to be a mere intermeddler or stranger, and that, under the rules recognized by our supreme court in such cases, the decision of the lower court was correct. In support of their opinion they refer to *Crippen v. Chappel*, 35 Kan. 495; *Yaple v. Stephens*, 36 id. 680; *Farm Land Co. v. Elsbree*, 55 id. 562.

The judgment will be affirmed.

GARVER and CLARK, JJ., concurring.

GILKESON, P. J., dissenting.