# NELSON *v.* McKEE.

[No. 7,854.   Filed October 11, 1912.   Rehearing denied April
25, 1913.]

1. TRIAL.—*Special Findings.—Failure to Find Essential Fact.*—
Where the facts are specially found, the failure to find a material
fact is equivalent to a finding against the party having the burden
of proving same.   p. 347.

2. SUBROGATION.—*Right to Subrogation.—Volunteer.*—Subrogation
is a creature of equity, but it is not applicable in favor of one who
has, officiously and as a mere volunteer, paid the debt of another,
for which neither he nor his property was answerable, and it is not
allowed where it would work any injustice to the rights of
others.   p. 348.

3. SUBROGATION.—*Right to Subrogation.*—The fact that money is
furnished to pay off existing liens, or for like purposes, on new
security which afterwards proves to be defective or insufficient, is
not a sufficient showing to give to such person the right of subro-
gation under the liens or claims so paid.   p. 353.

4. SUBROGATION.—*Superiority of Equities.*—Where there is no supe-
rior equity, or where the equities are equal, subrogation cannot
be successfully invoked.   p. 354.

5. MORTGAGES.—*Judgment Lien.—Subrogation.*—One's claim to sub-
rogation under a mortgage, for the payment of which he fur-
nished the money, taking to himself a new mortgage, is not
justified by the fact that the holder of a judgment lien junior to
such original mortgage is not harmed thereby.   p. 354.

6. MORTGAGES.—*Judgment Lien.*—One furnishing money for the
payment of another's mortgage, and taking to himself a mortgage
as security for the money advanced, is charged with knowledge
that judgment and other liens may have attached after the execu-
tion of the original mortgage, and which, upon its satisfaction,
will become prior liens to his mortgage.   p. 354.

7. SUBROGATION.—*Right to Subrogation.—Purchaser of Mortgage.*
—Where, subsequent to the execution of a mortgage on property,
a judgment lien was acquired against the property, and there-
after a depositor of the bank holding such mortgage took an
assignment of mortgage, which was reported to the mortgagor,
who consented thereto provided the interest rate be reduced,
which was done, and a new mortgage was thereupon made to
such depositor who released the original mortgage of record, such
depositor did not become subrogated to the rights of the bank so
as to make his rights under the second mortgage superior to the

judgment lien, and consequently the purchaser of the land, who assumed to pay such subsequent mortgage, acquired no right of subrogation under such original mortgage. p. 354.

From Fountain Circuit Court; *I. E. Schoonover,* Judge.

Action by Effa B. McKee against John A. Nelson. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*C. W. Dice,* for appellant.

*A. T. Livengood* and *V. E. Livengood,* for appellee.

FELT, J.—Appellee brought this action to quiet title to certain land owned by her against a personal judgment secured by appellant against appellee's grantor while the latter was the owner of said land. Appellant's single assignment of error is that the trial court erred in its conclusions of law based upon its special finding of facts. The finding, in substance, is as follows: That on March 8, 1905, one Thomas J. White, conveyed to Elbert E. McKee the lands described in appellee's complaint; that on March 8, 1905, the Kingman Bank, of Kingman, Indiana, loaned to said McKee the sum of $1,335, evidenced by his promissory note, secured by a mortgage upon said real estate, executed by said McKee and wife, appellee herein; that said mortgage was duly recorded and was the sole and only lien on said real estate at the time of its execution; that on Nov. 30, 1906, appellant recovered judgment in the Fountain Circuit Court upon a promissory note, against the said Elbert E. McKee, in the sum of $365 and costs, which judgment is unpaid; that on December 28, 1906, appellant caused an execution to be issued on said judgment and thereupon all the property of said Elbert E. McKee was duly appraised according to law and the same, including his interest in the real estate in controversy, was appraised for less than $600 and was duly claimed by him as exempt from execution; that said Elbert E. McKee was at the rendition of said judgment and thereafter during all the transactions connected with this suit, a resident householder of Fountain

County, State of Indiana, the husband of appellee; that one Albert Marshall was a depositor of said Kingman Bank and had money he desired to loan upon real estate security and so informed one Booe, the cashier of said bank; that said cashier informed said Marshall of the mortgage held by the bank on McKee's land and that the same was drawing 8 per cent interest and was a first lien upon the land; that there was due thereon the sum of $1,395 and the bank would sell and transfer the note and mortgage to him and thereupon said Marshall agreed to so purchase the same if it was satisfactory to said McKee; that said cashier informed McKee of said proposal and he reported it satisfactory except he desired to reduce the rate of interest to 7 per cent; that said cashier reported such fact to Marshall, who thereupon agreed to the change of interest and proposed to take a new note and mortgage upon the same lands for the amount due the bank, which proposition was accepted and in pursuance thereof, on August 3, 1907, said McKee executed to said Marshall his note for $1,395, due, in one year and bearing 7 per cent interest; that to secure the same, his wife joining therein, he executed a mortgage upon said real estate; that the money so obtained was at the instance of said McKee used to pay the mortgage to said bank; that said Marshall believed his said mortgage was the first and only lien on said real estate and was ignorant of the judgment of appellant; that said McKee approved the action of the bank in securing said loan and the mortgage to the bank was on September 7, 1907, duly released of record; that on December 24, 1907, said McKee, appellee, joining him, executed a mortgage upon said real estate to one Jesse M. Inlow for $503.55, which remains unpaid; that on March 25, 1909, said McKee conveyed said real estate by quitclaim deed to his wife, appellee herein, for the consideration of $2,000, she assuming the Marshall and Inlow mortgages as part of the purchase price; that on March 25, 1909, all of Elbert E. McKee's property, was of the

value of $500; that appellee, at the time of the conveyance of said real estate to her, had actual knowledge of appellant's judgment and said real estate was of the actual value of $2,000 and has never been worth less than that amount.

As its conclusions of law upon such facts the court found that appellee was entitled to have her title to the real estate quieted as against appellant's judgment. Appellant contends that when the mortgage to the Kingman Bank was paid and satisfied, his judgment became the first lien upon the real estate in question; that the same cannot be held junior to the mortgages executed to Albert Marshall and said Inlow subsequent to the date of his judgment. Appellee contends, and the trial court held, that on the facts found, said Marshall was subrogated to the rights of the bank under its mortgage; that appellee's grantor was at the time of the conveyance, a resident householder of the State, all of whose property was worth less than $600; that appellee obtained the benefit of Marshall's right of subrogation and took the conveyance of the real estate in question free from any lien or incumbrance by virtue of appellant's judgment.

Two principal questions are presented: (1) Was Marshall subrogated to the rights of the bank? (2) If so, can appellee claim the benefit of such subrogation against the rights of appellant? There is no finding of facts showing any misrepresentation or fraud practiced by said Elbert E. McKee or the bank to induce said Marshall to make the loan and accept the mortgage, nor is there any finding showing any diligence on the part of said mortgagee to ascertain from the public records or other sources the existence of judgments, liens or conveyances affecting the security of his loan. Nor is there any finding to the effect that the release of the mortgage was procured by fraud or misrepresentation on the part of said McKee, or of any one. The

1. failure to find such facts, under numerous decisions of this and our Supreme Court, is equivalent to a

finding against the party having the burden of proving them. *Ayers* v. *Adams* (1882), 82 Ind. 109, 111; *Heiney* v. *Lontz* (1897), 147 Ind. 417, 420, 46 N. E. 665.

The court finds that the bank was desirous of procuring the money on the McKee mortgage; that Marshall was a depositor of the bank desiring a loan; that the cashier of the bank informed him of the McKee mortgage and he agreed to purchase and take an assignment of the same; that this arrangement was reported by the cashier to McKee who consented to the arrangement, provided the interest was changed from 8 to 7 per cent; that this fact was reported to Marshall who thereupon agreed to loan the money at 7 per cent and requested the execution of a new mortgage which was duly executed and the mortgage of the bank thereafter released of record. The case is wholly unlike those where there was an express agreement for subrogation or the original mortgage was to be kept alive for the use and benefit of the party furnishing the money and through mistake or fraud the same was thereafter released. The question arises, Was Marshall a volunteer, or were his relations to the transaction such as to entitle him to be subrogated to the rights of the bank under its mortgage which was paid and satisfied?

2. Sheldon, Subrogation (2d ed.) §1, in defining subrogation, states: "It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form, independently of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another for which neither he nor his property was answerable, and it is not allowed where it would work any injustice to the rights of others."

the same author, also states, §3: "* * * And there
will be no subrogation unless the payment was made
either under compulsion, or for the protection of some
interest of the party making the payment, and in dis-
charge of an existing liability. The demand of a
creditor which is paid with the money of a third
person, without any agreement that the security shall
be assigned or kept on foot for the benefit of such
third person, is absolutely extinguished; but the doc-
trine of subrogation will be applied to reimburse one who has .
been compelled to pay the debt of a third person in order to
protect his own rights or to save his own property." See,
also, Sheldon, Subrogation (2d ed.) §8. In the case of *Binford*
v. *Adams* (1885),104 Ind. 41, 3 N. E. 753, our Supreme Court
considered a case where it was claimed that a third party
who had paid the debt of another, was entitled to the right
of subrogation. In that case the facts show that the bank
held a note of one Walker and that one Binford came with
him to the bank and paid the note, and at his request, it
was delivered to him without cancellation. The bank offi-
cers testified that nothing was said about purchasing the
note, and that the note was not purchased from the bank.
The court on page 42 used the following language: "Bin-
ford was a mere volunteer, for he was a stranger to the
transaction, without any interest to protect or rights to pre-
serve. The case does not, therefore, come within the rule,
that where payment is made by one who has some interest
in protecting property against the enforcement of a claim,
or who has junior rights to guard, equity will subrogate
him to the rights of the person whose claim he has paid;
but it is within the general rule, that where a claim is paid
by a third person having no existing interest in the matter
it· is an extinguishment of the claim." A person who may
be compelled to pay a debt, or the protection of whose prop-
erty or interest requires that he pay it, is not a volunteer
and in some instances where peculiar and exceptional

equities are involved, a third person who advances money for the payment of incumbrance upon real estate, may be subrogated to the rights of the party whose debt was paid; but in all such instances, there must be something more than the voluntary act of making a loan to provide the money with which to pay and discharge an existing mortgage or other lien. In *Heiney* v. *Lontz, supra,* 423, our Supreme Court by Hackney, J., in discussing this question said: "However, it has been held that one who advances money for the payment of an incumbrance, upon the promise merely of repayment, without any interest of his own to protect and without promise of subrogation, and, we may add, without fraud or imposition upon him, is not entitled to subrogation. *McClure* v. *Andrews* [1879], 68 Ind. 97; Sheldon, Subrogation (2d ed.) §3; *Shinn* v. *Budd* [1862], 14 N. J. Eq. 234; *Webster and Goldsmith's Appeal* [1878], 86 Pa. St. 409; *Guy* v. *DuUprey* [1860], 16 Cal. 195, 76 Am. Dec. 518. The cases of *Sidener* v. *Pavey* [1881], 77 Ind. 241; *Johnson* v. *Barrett* [1889], 117 Ind. 551 [19 N. E. 199, 10 Am. St. 83], and *Spaulding* v. *Harvey* [1891], 129 Ind. 106 [28 N. E. 323, 13 L. R. A. 619, 28 Am. St. 176], each contain an element of fraud in the procurement of the second loan from which the first, and the lien incident thereto, are discharged. They are not, therefore, in point upon this question." This court in *Townsend* v. *Cleveland Fire Proofing Co.* (1897), 18 Ind. App. 568, 577, 47 N. E. 707, said: "Subrogation is an equitable and not a legal right. Being the creature of equity, it will not be enforced where it will work an injustice to the rights of those having equal equities. * * * Where one person deals with another and has it in his power to make his own terms so as to secure himself against loss, but fails to do so, he cannot then invoke the equity of subrogation." The controlling facts in the case of *Watson* v. *Wilcox* (1876), 39 Wis. 643, 20 Am. Rep. 63, are similar to those of the case at bar and on page 649 the Supreme Court of

that state said: ''The claim of the appellant to be subrogated to Sarah Ann Hodson, mortgagee of the premises in controversy under George and Harriet Harvey; that is, to have his mortgage subrogated to hers. Before the appellant took his own mortgage from George and Harriet Harvey, he was a stranger to the title, and had no connection with the mortgage debt due to Sarah Ann Hodson. His action in the premises was voluntary. He first proposed to purchase the Hodson mortgage, but subsequently abandoned that intention and advanced the amount due upon it for the Harveys, for the express purpose of satisfying and canceling the Hodson mortgage. This was done; the appellant thereupon taking a new mortgage for his own security. It is difficult to see how the doctrine of subrogation can aid him.'' In *Fort Dodge, etc., Loan Assn.* v. *Scott* (1892), 86 Iowa 431, 53 N. W. 283, the Supreme Court of Iowa had under consideration a question similar to the one at bar, and on pages 434, 435 said: ''It will be observed from the foregoing statement of facts that the defendant's judgment became a lien upon the lots in question at the time of its rendition, December 16, 1887, junior to said three prior mortgages, and so continued at the time the plaintiff took its mortgage, January 6, 1888. By the satisfaction of said three mortgages the defendant's judgment became a first lien, unless under the law and the facts the plaintiff is entitled to be subrogated to the rights of the mortgagees in said three prior mortgages. The plaintiff's contention is that, as it furnished the money with which said mortgages were paid under an agreement that it should be so applied, it is entitled to have the satisfaction of said mortgages cancelled, and to be subrogated to all the rights of the mortgagees. The right to subrogation rests upon equitable grounds, and is never granted as a reward for negligence. While it may be true, as claimed, that no equities inhere in the defendant's lien, that it is simply a lien given by law, it is certainly as true that the plaintiff's claim is equally

void of equities.  The position of the plaintiff is the result
of its own negligence.  It relied upon an abstract of title
which was not brought up to date, and which failed to note
the pendency of this defendant's action, or the judgment
in his favor.  *  *  *  Surely equity will not reward
such negligence by applying the doctrine of subrogation in
favor of the negligent party.  To do so would encourage
carelessness in taking such securities.  The following lan-
guage of this court in *Mather* v. *Jenswold* [1887], 72 Iowa
550 [32 N. W. 512, 34 N. W. 327], is directly applicable,
and decisive of the question under consideration: 'The
only question in the case is whether the plaintiff is entitled
to have the satisfaction of the Simmons mortgage set aside,
and that he be subrogated to all the rights of Simmons.
It seems to us that he is not entitled to such relief.  The
plaintiff made the loan to Lord for the express purpose of
paying the Simmons mortgage.  It was well understood
that the plaintiff was to accept a new mortgage, and the
plaintiff got all he bargained for.  There was no mistake,
except that the plaintiff failed to exercise the diligence re-
quired in the examination of the records, and, therefore,
failed to discover the existence of the judgment and the
sale thereunder.  No one can be blamed, but he must suffer
loss, simply because he was negligent.  There is no princi-
ple that will allow him to take advantage of that to the in-
jury of the diligent.' "  To the same effect are the follow-
ing:  *Wilkins* v. *Gibson* (1900), 113 Ga. 31, 38 S. E. 374,
84 Am. St. 204, 219, 220; 38 S. E. 374; *Small* v. *Stagg*
(1880), 95 Ill. 39; *Webster and Goldsmith's Appeal* (1878),
86 Pa. St. 409; *Wormer & Son* v. *Waterloo Agri. Works*
(1882), 62 Iowa 699, 702, 703, 14 N. W. 331; *Levy* v. *Mar-
tin* (1880), 48 Wis. 198, 206, 4 N. W. 35; *Wentworth* v.
*Tubbs* (1893), 53 Minn. 388, 397, 55 N. W. 543; *Stearns* v.
*Godfrey* (1839), 16 Me. 158, 162; *Cole* v. *Malcolm*
(1876), 66 N. Y. 363, 367; *Shinn* v. *Budd* (1862), 14 N.
J. Eq. 234, 238; *Kitchell* v. *Mudgett* (1877), 37 Mich. 81,

86; *Wooldridge* v. *Scott* (1879), 69 Mo. 669; *Cohn* v. *Hoffman* (1887), 50 Ark. 108, 6 S. W. 511; *Howell* v. *Bush* (1877), 54 Miss. 437; *Capen* v. *Garrison* (1906), 193 Mo. 335, 92 S. W. 368, 5 L. R. A. (N. S.) 838 note. The later decisions show a broader and more liberal application of the doctrine than originally obtained and evidence a divergence of views with reference to volunteers or strangers to the original transaction. It would be a difficult and perhaps hopeless task to undertake to fully reconcile the numerous cases. However, it is apparent that the conflict of authority is more in the language employed in the decisions than in the questions actually decided by the courts. The prevailing weight of authority in this and other states holds to the doctrine that a mere volunteer is not entitled to the right of subrogation. The fact that money is furnished to pay off existing liens, or for like purposes, on new security which afterwards proves to be defective or insufficient, is not a sufficient showing to give to such person the right of subrogation under the liens or claims so paid. If one not compelled so to do to protect some right or interest, voluntarily furnishes money to pay off a mortgage or other lien, without any fraud, mistake or misrepresentation inducing him so to do, and takes a new mortgage or other obligation as security, knowing that the old claim or lien is to be satisfied, and his security fails or proves defective, he is not entitled to be subrogated to the rights of the mortgagee or lien holder whose claim has been so paid, as against the rights of other persons holding valid liens upon the property. In such case the original debt is extinguished and equity will not keep the lien alive for the protection of one who has been free to contract, though he may through negligence or for other reasons, have obtained defective or valueless securities. This is especially true where the holders of valid claims must be disturbed in their legal rights if subrogation is granted. Where

there is no superior equity, or where the equities are 4. equal, subrogation can not be successfully invoked.

*Richmond* v. *Marston* (1860), 15 Ind. 134; *Spray* v. *Rodman* (1873), 43 Ind. 225; *McClure* v. *Andrews* (1879), 68 Ind. 97; *Muir* v. *Berkshire* (1875), 52 Ind. 149; *Nash* v. *Taylor* (1882), 83 Ind. 347, 351; *Edinburg, etc., Mortg. Co.* v. *Latham* (1882), 88 Ind. 88; *Sidener* v. *Pavey, supra; Johnson* v. *Barrett, supra; Spaulding* v. *Harvey, supra; Thompson* v. *Connecticut Mut. Life Ins. Co.* (1894), 139 Ind. 325, 346, 38 N. E. 796; *Shattuck* v. *Cox* (1891), 128 Ind. 293, 27 N. E. 609; *Davis* v. *Schlemmer* (1898), 150 Ind. 472, 478, 50 N. E. 373; *Warford* v. *Hankins* (1898), 150 Ind. 489, 50 N. E. 468.

The proposition mainly relied upon to support the 5. claim to the right of subrogation is that the holder of the judgment lien is not harmed thereby. This 6. is true, but on the other hand his judgment was of record and a person taking a new mortgage and knowing that the existing mortgage was to be paid and satisfied, is charged with notice of the fact that judgment and other liens may have attached to the property after the execution of the mortgage which was to be satisfied. The law compels knowledge of the fact that an outstanding judgment junior to an existing mortgage will become a first lien upon satisfaction of the mortgage and thus determines appellant's right to hold his senior lien, and if he can be deprived of such right, it must be by virtue of some superior equity.

All the parties to the transaction knew the money 7. was to be used to pay the bank. The original proposition involved a sale by the bank of its mortgage. The change in the rate of interest may or may not have suggested the advisability of a new mortgage, but certainly it did not make it a necessity. The new mortgage was executed at the request of the mortgagee and he accepted it knowing the old one was to be satisfied. There was no ex-

press agreement that the old security should be kept alive for his benefit, and we can not imply such an agreement when he voluntarily elected to take a new mortgage and knew the old one was to be satisfied. He saw fit to secure his loan by a new mortgage, and got what he demanded. True, he believed he was obtaining a first lien upon the real estate, but this belief was not induced by any fraud or misrepresentation. If he did not get all he thought he was obtaining, it was due to his own negligence in failing to ascertain the existence of other liens upon the property covered by his mortgage. When we balance equities, the facts of this case show no superior equities in favor of the mortgagee as against appellant's rights. The mortgagee was a stranger to the transaction until he made the loan and his belief, under such circumstances, that he was obtaining a first mortgage, was only possible because of his own negligence. He failed to take the necessary precautions and employ the ordinary means to ascertain the character and value of his security. The mere fact that his money was loaned to pay an existing mortgage and the further fact that subrogation would not place appellant in a worse situation than he was in before the satisfaction of the bank's mortgage, are not sufficient to overcome his voluntary act in loaning the money, demanding and receiving a new mortgage, knowing the old one was to be released, and his negligence in failing to ascertain the existence of liens against the mortgaged property. We are aware that there are statements in the decisions to the effect that one who furnishes money to pay off an existing encumbrance on realty at the instance of either the owner of the property or the holder of the encumbrance, may by an express agreement be subrogated to the rights of the party holding the security so paid, and that in the absence of an express agreement to that effect, one will be implied where the facts and equities of the case warrant such implication. In either of such cases, the person is not regarded as a volunteer.

We find no case, however, that goes to the extent of granting such relief where the party has voluntarily elected to take a new mortgage when he could have obtained the original security and where he knew the old mortgage was to be satisfied and he negligently failed to ascertain the existence of other prior liens, and was not brought into such situation by any fraud, misrepresentation or excusable neglect. In *Heiney* v. *Lontz, supra,* Judge Hackney distinguished the three cases most relied upon in this State for the application of the doctrine of subrogation to volunteers in such transactions. The case of *Thompson* v. *Connecticut Mut. Life Ins. Co., supra,* is also cited to support this doctrine, but the court by Howard, J., said the right of subrogation could not be allowed if "there were no intervening equity, on account of which the lien of the first mortgage ought to be kept alive." The court, on page 344 of the opinion, points out the peculiar facts in that case which take it out of the operation of the general rule, and they were clearly sufficient for that purpose. The opinion adheres to the general rule, and after citing authority in support of it says: "The decisions of this State are to the same effect as to volunteers, and hold, substantially, that it is only in case where the person paying the debt stands in the situation of a surety, or is compelled to pay in order to protect his own interests, or in virtue of legal process, that equity, as a matter of course and without special agreement, substitutes him in the place of the creditor; and that, in the absence of an agreement to that effect, a stranger paying the debt of another, will not be subrogated to the creditor's rights. Payment by such stranger absolutely extinguishes the debt." In the case of *Warford* v. *Hankins, supra,* the claim was a purchase-money lien expressly reserved in the deed and the party to whom subrogation was granted took up the note on an express agreement with the makers that the note and lien securing the same should be held by her as security. The mortgage against which subrogation was granted, was

given for preëxisting debts and would not cut off prior equities. The ground of subrogation was clear under all the authorities and the decision cites and approves the case of *Binford* v. *Adams, supra,* where subrogation was denied on a state of facts in all essentials similar to those of the case at bar. It is clear that if the facts do not warrant subrogation in favor of Marshall, the mortgagee, the appellee can not avail herself of benefits depending upon his right of subrogation. The case presents a peculiar situation as the claim for subrogation is here presented, not by the holder of the mortgage, but by the owner of the land who has assumed payment of the mortgage.

Our conclusion that there can be no subrogation as against the rights of appellant under his judgment makes it unnecessary for us to decide whether the appellee could avail herself of the benefits of such right if the facts warranted subrogation in favor of the mortgagee. The judgment is therefore reversed with instructions to the lower court to restate its conclusions of law in favor of appellant and to render judgment in accordance with such conclusion.

Hottel, C. J., Adams, P. J., and Lairy, Myers and Ibach, JJ., concur.

## ON PETITION FOR REHEARING.

FELT, P. J.—On reexamination of the questions involved in this appeal, we are satisfied with the conclusions announced in the original opinion, but have concluded that the ends of justice may be better subserved by modifying the mandate of the original opinion and instead of directing that the conclusions of law be restated in favor of appellant, grant to him a new trial. It is therefore ordered that the trial court grant to appellant a new trial and that the mandate of the original opinion be and the same is modified accordingly.

NOTE.—Reported in 99 N. E. 447; 101 N. E. 651. See, also, under (1) 38 Cyc. 1985; (2) 37 Cyc. 372, 375; (3) 37 Cyc. 468, 470; (4) 37 Cyc. 371; (5) 27 Cyc. 1435; 37 Cyc. 471. As to subrogation where one has furnished means for paying off old mortgage and himself taken new one, see 99 Am. St. 521. . On the question of the right to subrogation to lien of mortgage for money advanced to pay off the same on defective security, see 5 L. R. A. (N. S.) 838. On the right of one who advances money to another for purpose of redeeming from a sale under a mortgage to be subrogated to the lien of the mortgage, see 23 L. R. A. (N. S.) 190.