Thomas *et al. v.* Stewart *et al.*

—————————♦—————————

No. 13,434.

THOMAS ET AL. *v.* STEWART ET AL.

SUBROGATION.—*Surety.—Sheriff's Sale.—Redemption.—Innocent Purchasers.*—Where a surety permits a judgment to be taken against him as a joint principal, and stands by until other persons, without notice of his rights other than that afforded by the record, have acquired title to the principal's property through the foreclosure of a prior mortgage, and have made valuable improvements thereon, he can not afterwards, having paid the judgment, establish his suretyship as against the good faith purchasers and be subrogated to the right of the judgment creditor; who was not a party to the foreclosure proceedings, to redeem from the sale thereunder.

From the Clay Circuit Court.

*D. E. Williamson, A. Daggy* and *S. McGregor,* for appellants.

*W. W. Carter, J. D. Cornell* and *G. A. Knight,* for appellees.

MITCHELL, J.—Stewart and Andrew filed a complaint in the nature of a bill in equity, in which they claimed the right to establish their relation as sureties to a joint judgment theretofore recovered against the plaintiffs and one Jacob Thomas, and to be permitted to redeem certain real estate formerly owned by Thomas, which had been sold to satisfy a prior mortgage.

The facts as specially found by the court show that Thomas mortgaged a certain lot in the city of Brazil, in Clay county, to Abel McQueen, on the 4th day of October, 1877, to secure a debt of $800, due in one year from date, with ten per cent. interest. Afterward, on the 1st day of February, 1879, Robert M. Wingate recovered a judgment in the Clay Circuit Court against Thomas, Stewart and Andrew, for $591.25. On the 10th day of March, 1879, McQueen instituted proceedings to foreclose his mortgage, making Thomas and wife and others, who were junior lien-holders, parties, but Wingate, who had theretofore recovered judgment as above mentioned, was not made a party, nor did he have any notice of the proceedings by McQueen. The mortgage was duly foreclosed, and the land sold in pursuance of the decree to McQueen, who obtained title under the sale, in due time. Afterward, on the 11th day of November, 1880, McQueen conveyed the property to Rebecca A. Thomas, who, within ten days thereafter, sold and conveyed a part of the tract to George Haberle, for the consideration of $1,000, paid in cash, and the residue to Jacob Baumunk, who paid a like consideration. The part conveyed to Baumunk was afterward sold by him to Michael and Mary Ryan. The several purchasers from Mrs. Thomas went into possession immediately, and made lasting improvements of the value of $3,000. Jacob Thomas died intestate on the 18th day of February, 1880, leaving Rebecca A. his widow and sole heir. His estate was wholly insolvent, and was so settled at the March term, 1883, of the Clay Circuit Court. Stewart and Andrew paid $834.40 in satisfaction of the Wingate judg-

ment, on the 28th day of September, 1882.   It is found that they were sureties for Thomas, but the judgment in favor of Wingate was rendered against the three jointly, without any issue or adjudication of suretyship.   Mrs. Thomas had actual notice of the suretyship of Stewart and Andrew, but her grantees had no other notice, except such as the record of the judgment afforded.   Stewart and Andrew both resided in the city of Brazil, and had notice of the improvements that were being made by the defendants.   This action was commenced May 20th, 1885, the plaintiffs having shortly prior thereto offered to redeem, but their right to redeem was denied and the offer refused.

Upon the facts found, the material part thereof being, in substance, as above stated, the court stated conclusions of law to the effect that Stewart and Andrew, as sureties for Thomas, were subrogated to the right of Wingate, they having paid the judgment in favor of the latter, and that they were hence entitled to redeem the land owned and improved by Haberle and the Ryans, upon terms fixed in the decree.   The merits of the appeal are all involved in a determination of the propriety of the conclusions of law stated upon the facts found.

Wingate, having recovered a judgment which constituted a lien upon the real estate owned by Thomas, and previously mortgaged by the latter to McQueen, and not having been made a party to the foreclosure proceedings by the latter, had the undoubted right to redeem from the McQueen sale.

This right continued in him until his judgment was paid off and satisfied.   The defendants, having acquired the legal title as purchasers, might have compelled him to come in and exercise his right upon terms, or be forever barred therefrom, by proceedings in the nature of a strict foreclosure. *Jefferson* v. *Coleman*, 110 Ind. 515, and cases cited.

This was not done, but after standing open until September, 1882, the judgment was satisfied by the plaintiffs, who were apparently joint principals, and thus all right of re-

demption was extinguished, so far as anything appeared upon the record of that judgment. The question now arises, may the plaintiffs establish their relation as sureties to the judgment, and avail themselves of Wingate's right of redemption, upon the principles of equitable subrogation, as against the defendants, who relied upon, and who were charged with notice of, the record as it appeared ?

It is, of course, abundantly settled that a surety, who has been compelled to pay the debt of his principal, will be subrogated to all the rights, remedies, liens, and equities of the creditor. Payment by a surety, although it may discharge the debt, and extinguish liens or securities held by the creditor, does not have that effect as between the principal debtor and his surety. As between them, payment by the latter is in the nature of a purchase from the creditor, and operates as an equitable assignment of the debt, and all its incidents to the surety. *Orem* v. *Wrightson,* 51 Md. 34; Brandt Sur., section 260.

This equitable right is cumulative, and exists entirely independent of any statutory provisions, and is equally available to the surety, except when the rights of innocent purchasers intervene, whether the question of suretyship has or has not been determined in the statutory method. *Gipson* v. *Ogden,* 100 Ind. 20; *Peirce* v. *Higgins,* 101 Ind. 178; *Pence* v. *Armstrong,* 95 Ind. 191; Sheldon Sub., section 86.

Subrogation is, however, founded on the principles of equity and benevolence, and is not to be allowed in favor of one who has permitted the equity he asserts to sleep in secrecy until the rights of others would be injuriously affected by its assertion and enforcement. *Gring's Appeal,* 89 Pa. St. 336; Sheldon Sub., sections 110, 111.

A court of equity acts on the conscience, and as one who has purchased or expended money in good faith without notice is in no fault, there is no ground for a demand upon his conscience in favor of one whose lack of diligence in failing

to make known a latent equity would result in injury to others who are without fault.

This leads us to inquire as to the situation of the parties so far as exhibited by the record. The Wingate judgment was recovered in February, 1879. So far as could be learned from the record, no one dealing with the land owned by Thomas could know that Stewart and Andrew were not only equally bound as co-defendants of record, but equally liable as principals to pay the judgment. The rule is that surety-ship will never be presumed, and that where a judgment is joint, those against whom it is rendered are all to be regarded as principals, and persons dealing with land upon which a judgment so taken is a lien may proceed upon that presumption until they have notice to the contrary. *Laval* v. *Rowley*, 17 Ind. 36 ; *Reissner* v. *Dessar*, 80 Ind. 307; *Harker* v. *Glidewell*, 23 Ind. 219 ; *Dougherty* v. *Richardson*, 20 Ind. 412.

Persons who purchase real estate from one of three joint judgment debtors, have a right to take into account the liability of the other two as it appears upon the record, and they may regulate their conduct according to the known or apparent solvency or insolvency of those jointly liable.

The statute furnishes an easy and convenient method by which sureties may have the fact of their relation to the judgment established, and if, through their failure to avail themselves of the benefit of the statute, a third party acts on the faith of the record, they have no right to complain.

The present case is controlled by the principles which ruled in *Dougherty* v. *Richardson, supra,* in which it appeared that Speake recovered a judgment against Crawford and Sinex, both of whom appeared on the face of the record as principals. Shortly after the rendition of the judgment Crawford sold part of his real estate for its full value, and the part so sold eventually passed into the hands of Dougherty. After having sold the remaining property owned by Crawford, upon execution, the judgment being still unsatisfied, the property

conveyed to Dougherty as above was levied upon. The latter brought suit to enjoin the sale, setting up the facts as above, and alleging that Sinex was the owner of real and personal property more than sufficient to satisfy the judgment, and that Crawford and the other intervening grantors were insolvent. Sinex answered, setting up that he was only surety for Crawford, and claimed the right to be exonerated as such, until the property owned by his principal, at the date of the judgment, should first be exhausted. The court held that Sinex, having stood by and suffered himself to be regarded as a principal debtor, until after the vendees of Crawford had acquired title and expended their money upon the faith of the presumption which arose from the record, had thereby divested himself of the privilege of insisting upon his position as a surety, in contravention of the equitable rights which had supervened. So, here, Stewart and Andrew were content to stand for six years and more upon the presumptions which arose from the judgment record, until the grantees of Mrs. Thomas acquired title, and expended a sum for improvements sufficient to justify the redemption of the sale upon which their title rested.

As was pertinently said in the case above referred to, if they are now to be regarded as sureties, they can not be regarded as having acted in good faith towards those who were investing their money on the faith of the record.

The purchasers, although they were bound to know that Wingate had not been made a party to the McQueen foreclosure, and that he had, therefore, the right to redeem, had, nevertheless, the right to assume that if two of the three jointly liable to pay the judgment were solvent, the creditor might collect the debt from them, and thus discharge the judgment, and with it the right of redemption. This is what happened, and they can not now be disappointed.

The distinction between the present case and *Catterlin* v. *Armstrong*, 101 Ind. 258, and cases of that class, in which

the rights of junior mortgagees whose mortgages were of record were involved, is obvious.

Upon the facts found the conclusions of law should have been in favor of the appellants.

The judgment is therefore reversed, with costs, with directions to the court below to restate its conclusions of law and render judgment for the appellants in accordance with this opinion.

Filed Nov. 13, 1888; motion to modify mandate overruled January 23, 1889.