AMERICAN FIDELITY COMPANY OF MONTPELIER, VERMONT, *v.* EAST OHIO SEWER PIPE COMPANY ET AL.

[No. 7,970. Filed April 24, 1913.]

1. SUBROGATION. — *Volunteers.*—*Public Improvements.*—*Contracts.* —*Compensation.*—*Assignment.*—One who pays the debt of a municipal contractor at his request, or who advances or loans him money with which to carry on the contract, is not a mere volunteer, and the payment of such debt or the making of such advances will support an assignment of the contractor's compensation. p. 339.

2. SUBROGATION.—*Payment by Surety.*—A surety seeking the benefit of subrogation must show that he has paid the obligation for which his principal was primarily liable. p. 340.

3. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Contractor's Bond.*—*Rights of Surety.*—*Subrogation.*—*Diligence.*—A surety on the bond of a municipal contractor for the construction of a public sewer, who failed to assert its rights to be subrogated to the money in the hands of the city until long after it had been assigned, and material men had brought an action against the surety, is barred by its laches from asserting a right to be subrogated to such money, since subrogation is founded in equity, and before equity may be invoked for purposes of subrogation, diligence must be shown. p. 341.

4. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Contractor's Bond.*—*Discharge of Surety.*—A surety on the bond of a municipal contractor for the construction of a public improvement is not discharged on the approval of the final assessment roll, and an action on the bond may thereafter be maintained against such surety. p. 343.

5. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Contractor's Bond.*—*Discharge of Surety.*—The surety on the bond of a municipal contractor for the construction of a public improvement is not discharged by the failure of the city to require evidence of the payment of all bills before accepting the work and approving the assessment roll, as contemplated by the specifications and by the contract and bond. p. 343.

From Marion Circuit Court (17,579); *Charles Remster,* Judge.

Action by the East Ohio Sewer Pipe Company against Thomas J. Markey and others. From a judgment for plaintiff, the defendant, American Fidelity Company of Montpelier, Vermont, appeals. *Affirmed.*

*Pickens, Moores, Davidson & Pickens,* for appellant.

*Joshua E. Florea, George Seidensticker, Adolph Seidensticker, Frank Seidensticker, Charles W. Smith, Henry Hornbrook, Albert P. Smith* and *Joseph E. Bell,* for appellees.

SHEA, J.—Action by appellee, East Ohio Sewer Pipe Company, to recover the amount due for certain sewer pipe sold by it to Thomas J. Markey for use in constructing a sewer in the city of Indianapolis, under a contract between Markey, doing business under the name of Thomas J. Markey & Company, and said city. The action was primarily against said Markey and appellant, as principal and surety, respectively, upon a bond given to secure the performance of the contract. The city of Indianapolis, its comptroller, treasurer, and The Home Bond Company were made parties defendant because of the alleged assignment of the assessment roll arising from the construction of the improvement, to The Home Bond Company. The amended complaint was in one paragraph, to which a separate demurrer by The Home Bond Company was sustained. Answer in general denial by Thomas J. Markey. Appellant filed a cross-complaint against appellees and all of its codefendants, and a separate answer in three paragraphs to the complaint. Reply by appellee, East Ohio Sewer Pipe Company, in two paragraphs to appellant's answer. A separate demurrer by The Home Bond Company to the cross-complaint was sustained, and appellant declining to plead over, judgment was rendered in favor of The Home Bond

Company on the cross-complaint. The cause as between appellee East Ohio Sewer Pipe Company and Thomas J. Markey and appellant, was tried by the court and a finding made that Markey was principal and appellant surety; that the property of Markey was subject to execution, and should be exhausted before any proceedings were taken against the property of appellant. Judgment against Markey and appellant for $373.88 and costs. Appellant's motion for a new trial was overruled.

The errors assigned are, the sustaining of the demurrer of The Home Bond Company to the cross-complaint, and the overruling of appellant's motion for a new trial. We shall consider first the error assigned on the ruling of the court in sustaining the demurrer of The Home Bond Company to appellant's cross-complaint, the material allegations of which, are, in substance, as follows: That appellant is a corporation organized under the laws of Vermont, and doing a general surety and indemnity business in Indiana; that on September 20, 1907, Thomas J. Markey & Company entered into a written contract with the city of Indianapolis for the construction of a sewer in Maryland Street in said city; that appellant became surety upon their bond under the provisions of §8959 Burns 1908, Acts 1905 p. 219, §265. The terms of the contract required Thomas J. Markey & Company among other things, to pay all bills for labor and material used in the construction of the improvement, and to secure the faithful performance of this contract said bond was executed by Thomas J. Markey & Company as principal and appellant as surety; that the work was completed, approved and accepted by the city; that assessments were made in accordance with the statute providing for the construction of said sewer; that a portion of the assessments amounting to $——— is now in the hands of E. J. Robison, ex-officio treasurer of Indianapolis, and that there is still due $——— on account of said assessments;

338    APPELLATE COURT OF INDIANA,

American Fidelity Co. *v.* East Ohio, etc., Co.—53 Ind. App. 335.

that bonds have been prepared and sold, or are in the hands of George T. Breunig, city comptroller, for sale, to the amount of $——— as provided by statute. Before the completion of the work, Markey & Company assigned its interest in the assessment roll to The Home Bond Company for money loaned or claimed to have been loaned them, and by virtue of said assignment, The Home Bond Company now claims to be the owner of the bonds and money held by the treasurer and comptroller, respectively, and claims the right to collect from them the amount which may subsequently be paid under said assessments; that The Home Bond Company furnished no material for, and performed no labor upon the improvement, and the money furnished by it, if any, was diverted by Markey & Company for claims other than for labor or material furnished; that during the construction of said work Markey & Company purchased of plaintiff, East Ohio Sewer Pipe Company, certain materials, which plaintiff claims were used in the construction of the sewer; that Markey & Company also incurred other debts for labor and material furnished, the amounts of which are unknown to appellant, and are unpaid, and that Markey & Company is insolvent; that unless the proceeds arising from the assessment roll are applied to the satisfaction of these claims, appellant will be compelled to pay the amount thereof, to the full sum of its bond. Prayer that a receiver be appointed to receive and hold the proceeds of the assessment roll, and that each of the defendants be required to appear and answer as to his interest in said fund; that the same, after payment of costs of this action, shall be applied to the payment of all claims owing by said Markey & Company for labor and material furnished, and used in the construction of the sewer, and for all other proper relief, etc.

It is earnestly insisted, in this case, that the court committed error in sustaining the demurrer to appellant's cross-complaint. The theory of the cross-complaint is that the

rights of appellant and divers other creditors are superior
to the rights of The Home Bond Company, the assignee
of the assessment roll, who advanced certain sums of money
to the principal, Markey, during the construction of the
work, which, it is alleged in the cross-complaint, were not
used for material or labor in the construction of the im-
provement, but were diverted by the principal and used for
entirely different purposes.   The question to be determined,
is, which of the parties has the superior right to the fund in
question, in the hands of the city, derived from the assess-
ments upon property benefited.   Formal demand is made
for the appointment of a receiver to collect the fund thus
arising and pay it over to appellant.

Appellant very earnestly argues that its rights in
1.   respect to the money in the hands of the city officials,
and the money thereafter to be realized from the col-
lection of assessments and the sale of bonds, are superior,
and that it should be subrogated thereto, citing and relying
upon several authorities, the leading one of which is *Hen-
ningsen* v. *United States Fidelity, etc., Co.* (1908), 208 U.
S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, in which it is held
that the doctrine of subrogation was applicable to the surety
on the bond, and that he was entitled to the fund as against
the bank, which was the lender of money to the contractor.
The cases of *Aetna Life Ins. Co.* v. *Middleport* (1888), 124
U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, and *Prairie State
Bank* v. *United States* (1896), 164 U. S. 227, 17 Sup. Ct.
142, 41 L. Ed. 412, cited by appellant, are to the same effect.
Appellee insists that these cases are all governed by the
rule of the unlawful assignment of the assessments, for the
reason that such assignment is prohibited by the statutes of
the United States, (Revised Statutes U. S. §§3477, 3737)
which prohibit any contractor from assigning money due or
to become due him, and attempted assignments are declared
to be invalid, so that under such legal status, it is insisted
that the holder of such an assignment could claim no equi-

table rights as against a surety upon a contractor's bond. The above cases all treat the lender of money to a contractor, under the circumstances disclosed in the cross-complaint in this case, as a mere volunteer, and a stranger to the contract. This cannot be held to be the law in this case. In the case of *Warford* v. *Hankins* (1898), 150 Ind. 489, 50 N. E. 468, it is said: "Nor is one who pays a debt or advances money for the purpose, at the request of the debtor, a mere volunteer. \* \* \* (Citing authorities.) In 3 Pomeroy, Eq. Jurisp. §1212, it is said: 'The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer.' "

In support of the ruling of the trial court it is 2. further urged that the cross-complaint is bad for the reason, in the first instance, that there is no allegation that appellant has paid any money on account of its suretyship. In the case of *Henningsen* v. *United States Fidelity, etc., Co., supra,* the money had been actually paid by the surety. In the case of *Aetna Life Ins. Co.* v. *Middleport, supra,* it is held that the doctrine of subrogation and equity requires that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's right. It is settled in this State that: "The application of the doctrine of subrogation requires (1) that a person must have paid a debt due to a third person, for the payment of which another was in equity primarily liable." *Opp* v. *Ward* (1890), 125 Ind. 241, 24 N. E. 974, 21 Am. St. 220, 243. See, also, *Townsend* v. *Cleveland Fire Proofing Co.* (1897), 18 Ind. App. 568, 574, 47 N. E. 707. The security must first pay the debt, and can then himself enforce the securities. Sheldon, Subrogation (2d ed.) §115; *First Nat. Bank* v. *Wood* (1877), 71 N. Y. 405, 27 Am. Rep. 66; *Freehold Banking Co.* v.

*Brick* (1875), 37 N. J. L. 307; *Hall* v. *Hoxsey* (1877), 84 Ill. 616; 27 Am. and Eng. Ency. Law (2d ed.) 203, 204; *Glass* v. *Pullen* (1869), 69 Ky. 346. The language of the cross-complaint would warrant the court in reaching the conclusion that no money had actually been paid. It is alleged that "the persons furnishing labor and material * * * . have in equity a right to have said funds applied to the satisfaction of their said claims pro rata, and that unless the same are so applied, this cross-complainant will be compelled to pay the amount thereof to the full penalty of its said bond."

It is further insisted that the statutes of this State not only do not expressly prohibit assignments, but really recognize the right of a contractor to assign, appellee cites in support of his contention §§8713, 8714, 8725 Burns 1908, Acts 1907 p. 167, Acts 1905 p. 219, §§109, 120. In the case of *Aetna Indemnity Co.* v. *Wassall Clay Co.* (1912), 49 Ind. App. 438, 97 N. E. 562, the right of the contractor to assign the bonds, assessment-roll money, etc., to obtain money to finance the improvement, was presented on the complaint, and was not questioned by the parties to the issue. The question of the equitable rights of the parties was presented, but not decided because the assignee of the assessment roll was not a party to the action.

It is also a well-settled principle that before equity 3. may be invoked for the purpose of subrogation, diligence must be shown. *Thomas* v. *Stewart* (1889), 117 Ind. 50, 18 N. E. 505. There is no allegation in the cross-complaint explaining why there was delay in seeking the remedy therein demanded until a suit was actually brought by a materialman to recover the amount due him for material furnished by him and used in the construction of the improvement. In *Gring's Appeal* (1879), 89 Pa. St. 336, it is held that, "the right to subrogation is one of equity merely, and due diligence must be exercised in asserting it. Laches in taking advantage of the right will

forfeit it as against one who is injured by such laches.   In the case of *Wilkins* v. *Gibson* (1900), 113 Ga. 31, 38 S. E. 374, 84 Am. St. 204, it was held that if the person claiming the right of subrogation has unreasonably delayed in asserting such right, and in the meantime other persons have so acted in the premises that to assert the right of subrogation would be inequitable, subrogation will not be allowed. In the case of *Shattuck* v. *Belknap Savings Bank* (1901), 63 Kan. 443, 65 Pac. 643, it is said: "The right of subrogation, and, as well, the right to make payment of a prior lien upon which the claim of subrogation may be predicated, like all other rights, may be waived or abandoned." The case of *Watts* v. *Eufaula National Bank* (1884), 76 Ala. 474 holds that: "Subrogation, being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be asserted or waived at pleasure." See, also, Sheldon, Subrogation (2d ed.) §41, *et seq.* "The right of subrogation is one of equity merely, and due diligence must be exercised in asserting it.   Laches in taking advantage of the right will forfeit it, and subrogation is not allowed in favor of one who has permitted his equity to sleep in secrecy until the rights of others would be injuriously affected by its enforcement." 37 Cyc. 387, 388; *Thomas* v. *Stewart, supra; Gring's Appeal, supra;* 27 Am. and Eng. Ency. Law (2d ed.) 270.   There is also an absence of averment in the cross-complaint that appellant was obliged, upon failure of Thomas Markey to fulfill his contract, to complete the obligation, and pay out money in that behalf.   Appellant, in order to recover upon its cross-complaint, must show by averment of fact that it is entitled to subrogation, else the cross-complaint can not be held good as against a demurrer.   We see no reason why the principles laid down in the foregoing authorities should not be applied.   No sufficient reason is given for invoking a different rule because this is an improvement by a munici-

pality, paid for by assessment. The cross-complaint does not show that appellant was without knowledge of the assignment of the assessment roll; no reason is given for the delayed action by appellant, nor is it disclosed that the money for which appellant is liable, or any part of it, has actually been paid, therefore it is the opinion of the court that for these reasons no error was committed in sustaining appellee's demurrer to the cross-complaint.

In support of its motion for a new trial appellant contends that the bond ceased to be operative upon the approval of the final assessment roll, and that no action could be maintained upon it subsequent to that time. This question has been decided adversely to appellant's contention in a late case by the Supreme Court. *Aetna Indemnity Co.* v. *Indianapolis, etc., Fuel Co.* (1912), 178 Ind. 70, 98 N. E. 706. The further contention that the city's failure to require evidence that all bills had been paid before accepting the work and approving the assessment roll as contemplated by section 19 of the general specifications adopted by the Board of Public Works of the City of Indianapolis, and by the terms of the contract and bond sued upon made a part thereof, was a material deviation from the terms of said contract, and released the surety, has also been decided adversely to appellant in the same case.

The evidence fully sustains the verdict, and no error was committed in overruling appellant's motion for a new trial. Judgment affirmed.

NOTE.—Reported in 101 N. E. 671. See, also, under (1) 4 Cyc. 31; 37 Cyc. 468; (2) 37 Cyc. 400; (4) 28 Cyc. 1041. As to the nature, origin and kinds of subrogation and particularly as to voluntary payments and volunteers, see 99 Am. St. 493.