GATES, ADMINISTRATOR, *v.* FAUVRE.

[No. 9,520. Filed April 2, 1918. Rehearing denied June 26, 1918. Transfer denied December 15, 1920.]

1. APPEAL.—*Waiver of Error.*—*Briefs.*—*Failure to Present Objections to Complaint.*—Where appellant fails to present in his brief points suggested in his memoranda of objections accompanying his demurrer to the complaint, such points are waived. p. 387.

2. JOINT ADVENTURES.—*Contribution.*—*Pleading.*—In an action for contribution between joint adventurers, the contract with third persons out of the performance of which the liability arose is not the foundation of the action, and need not be set out in the complaint. p. 387.

3. JOINT ADVENTURES.— *Contribution.*— *Statute of Frauds.*— A complaint for contribution between joint adventurers upon the implied obligation of defendant to reimburse plaintiff to the extent the latter has discharged that portion of their joint obligation which should have been paid by defendant, is not open to the objection that it seeks to recover upon a special promise to answer for the debt of another within the Statute of Frauds.   p. 387.

4. APPEAL.— *Review.*— *Conflicting Evidence.*— Where the evidence is conflicting as to a fact in issue, the finding of the trial court is binding and conclusive on appeal.   p. 390.

5. RELEASE.—*Joint Obligation.*—*Joint Adventures.*—*Novation.*— Where one joint adventurer sold his interests to a third person who agreed to assume his liabilities, he was not released from liabilities already incurred, as between himself and another joint adventurer who had knowledge of such transaction, in the absence of the consent of, and the moving of a valid consideration to, the latter, since otherwise there would be no novation.   p. 392.

6. BILLS AND NOTES.—*Execution.*—*Joint Adventures.*—*Principal and Agent.*—Where two out of four joint adventurers sign with and entrust to another of the four persons a set of renewal promissory notes, with instructions to secure the signature of the fourth before making delivery to the payees, they make such person so entrusted their agent, and, as between themselves and the payees, are bound by his subsequent act in making the delivery without the fourth signature in violation of his instructions where there is no evidence tending to show any knowledge by or notice to the payees of such instructions or the violation thereof.   pp. 394, 398.

7. RELEASE.—*Contract.*—*Consideration.*—*Sufficiency.*—A release is a contract of discharge of an existing obligation or right of action, between the parties thereto, and when not under seal, must be shown to be supported by a sufficient consideration, moving between the parties or from or to third persons, and where the character of the consideration or arrangement therefor is such that the exercise of judgment is required to determine the value of the consideration, and the parties, uninfluenced by fraud or deception, have determined its sufficiency, courts will not review their decision.   p. 396.

8. RELEASE.—*Joint Debtors.*—*Release by Payee of One Releases All.*—The absolute release of one of several joint debtors by the payee of an obligation operates as a release of all.   p. 396.

9. RELEASE.—*Construction.*—*Evidence.*—*Ambiguity.*—The intention of the parties must govern in construing a release, to be gathered from the instrument when the release is in writing,

and from the facts, circumstances and relations of the parties when the release arises by operation of law, evidence being admissible to explain ambiguities when necessary in the construction of a release, or to show the facts relied on to show a release when it is not in writing. p. 397.

10. BILLS AND NOTES.—Renewal Note.—Release of Prior Obligee.—Release.—Where payee accepted renewal note with knowledge of the omission of the name of one of the joint obligees on the old note, surrendered the latter, and sued on the renewal note, the omitted person was thereby released from liability to the payee. p. 398.

11. RELEASE.—Joint Debtors.—Release of One.—Relations Inter Se Not Changed.—Where one of four joint debtors is released from obligation to the creditor by operation of law because of the violation of instructions given another joint debtor acting as agent of the remaining two in the preparation and delivery of a renewal note, by which the signature of the released debtor was not obtained, there was thereby no change in the relations and liabilities of the four joint debtors to pay the joint debt, as among themselves. p. 398.

12. NOVATION.—Assent of Parties.—Bills and Notes.—The violation of instructions by an agent in the preparation and delivery of a renewal note, resulting in the substitution of a new maker and the omission of the signature of one joint debtor on the old notes, without the knowledge or consent of the principals of such agent, they not having consented to the release of such omitted person, does not as against such principals establish a novation, since thereto consent of all the parties to the new arrangement is necessary. p. 399.

13. PAYMENT.—Acceptance of Note.—Presumptions.—Intention of Parties.—Proof.—Bills and Notes.—While the general rule is that the acceptance of a negotiable note is prima facie payment of a pre-existing debt, there is no presumption of payment from the acceptance of a nonnegotiable note, and in either case the intention of the parties is the controlling element, and, when in issue, may be ascertained from any competent evidence, either direct or circumstantial. p. 400.

14. BILLS AND NOTES.—Negotiability.—Place of Payment.—What Law Determines.—The negotiability of a promissory note payable at a bank in another state is determined by the laws of that state. p. 400.

15. EVIDENCE.—Judicial Notice.—Laws of Other States.—Presumptions.—Bills and Notes.—The courts do not take judicial knowledge of the laws of another state relating to the negotiability of promissory notes, and the common law will be presumed to prevail in the absence of pleading and proof. p. 400.

16. COMMON LAW.—*Law Merchant.*—*Bills and Notes.*—The law merchant is part of the common law, and governs bills of exchange, but did not, at common law, apply to promissory notes. p. 400.

17. JOINT ADVENTURES.— *Joint Obligation.*— *Renewal Note.*— *Payment.*—*Contribution.*—Where one of four joint adventurers did not join in a nonnegotiable renewal note, and there being no evidence that it was accepted as payment, the debt for which the joint adventurers were all liable was not paid until another of the four later paid it, which payment entitled him to contribution. p. 401.

18. JOINT ADVENTURES.— *Contribution.*— *Equity.*— Contribution among joint adventurers, after payment by one of a debt incurred by all in the joint enterprise is upheld by the principles of equity, which looks to the intent rather than to the form, and seeks to uphold and enforce rights and duties which spring from the real relations of the parties. p. 401.

From Marion Superior Court (81,971) ; *John J. Rochford,* Judge.

Action by Frank M. Fauvre against Harry B. Gates. From a judgment for plaintiff, the defendant appeals. Defendant having died pending appeal, Alfred Bennett Gates, administrator of his estate, has been substituted as appellant. *Affirmed.*

*Quincy A. Myers* and *Edward E. Gates,* for appellant.
*Smith, Remster, Hornbrook & Smith,* and *Miller & Dowling,* for appellee.

FELT, J.—Since the submission of this cause, the original appellant, Harry B. Gates, died, and on petition and notice Alfred Bennett Gates, administrator of the estate of Harry B. Gates, deceased, has been duly ordered substituted as appellant herein.

The suit was brought by appellee, Frank M. Fauvre, against Harry B. Gates in his lifetime, for contribution on account of the payment by appellee of a certain sum of money for the payment of which appellee alleges he and said Gates were jointly liable.  From a judgment

in favor of appellee in the sum of $3,331 this appeal is prosecuted. The errors assigned are the overruling of appellant's demurrer to the complaint and overruling the motion for a new trial.

In substance the material averments of the complaint are as follows: Prior to March 13, 1906, appellee, Frank M. Fauvre, Harry B. Gates, C. Edgar Elliott and Percival Moore, engaged in a joint enterprise to purchase from H. H. Bechtel, August Fabel and C. A. Gordon, certain securities of the Louisville and Eastern Railroad Company, owned by said Bechtel, Fabel and Gordon. By agreement, such purchasers were to be equally interested in said securities and equally liable for the purchase price thereof.

On March 13, 1906, said purchasers entered into a written contract with Bechtel, Fabel and Gordon by which they agreed to pay for said securities the sum of $60,000, of which amount $20,000 was to be paid in cash and $40,000 by notes of said purchasers. Thereafter said purchasers sold to the Marion Contract and Construction Company, a Kentucky corporation, certain of said securities so purchased as aforesaid, and in consideration thereof said corporation assumed the payment of said indebtedness of $40,000 evidenced by the notes of said purchasers. That said notes were renewed from time to time and said corporation paid said indebtedness, except $13,000 of the principal and $266.41 accumulated interest, for which amount said corporation gave its notes to said Bechtel, Fabel and Gordon, which notes were also signed by said Moore, Elliott and Fauvre. All prior notes had also been signed by said Harry B. Gates. The arrangements for the last renewal were made by said Moore, and Fauvre signed the notes and delivered them to Moore with the distinct understanding and agreement that the said Harry B. Gates should also sign them before they were delivered

to the payees, but in violation of such agreement said Moore delivered the notes without procuring the signature of said Gates.

Prior to the maturity of the notes said corporation was adjudged a bankrupt, and thereupon said Bechtel, Fabel and Gordon brought suit on said notes against said Fauvre and Elliott. Thereafter, on June 6, 1910, Fauvre paid the full amount due on said notes in the sum of $13,266.41 and costs of suit in the sum of $18.60.

The indebtedness so paid was the residue of the obligation created on behalf of said original purchasers of said securities, and represented in equal parts the obligation of said parties on account of benefits shared equally by them.

The demurrer to the complaint was for insufficiency of the facts alleged to state a cause of action.

The memorandum of objections to the complaint in substance states:   (1) That the contract which created the liability against the defendant was in writing and should be made a part of the complaint; (2) the promise declared upon is within the statute of frauds; (3) when defendant refused longer to become liable on the notes, plaintiff should have refused to renew them. If any liability exists in plaintiff's favor it is against Moore.

Appellant has not attempted to present in its briefs either the first or second points suggested in the memorandum, and the same are therefore waived.

1-3.  However, the action being for contribution, it is apparent that the writing is not the foundation of the action, and that the complaint does not proceed upon the theory that the plaintiff seeks to recover upon a special promise to answer for the debt of another, but does proceed upon the theory that the defendant is liable upon the implied obligation to reimburse plaintiff to the extent that he has discharged that portion of their

joint obligation which should have been paid by the defendant. §7462, cl. 2, Burns 1914, §4904 R. S. 1881; *Houck* v. *Graham* (1886), 106 Ind. 195, 197, 6 N. E. 594, 55 Am. Rep. 727; *Norris* v. *Churchill* (1898), 20 Ind. App. 668, 670, 51 N. E. 104.

The complaint does not show that Gates refused to renew the notes, but proceeds upon the theory that Moore violated his instructions in delivering the notes without the signature of Gates, and that when Fauvre paid the debt evidenced by such notes he thereby paid the balance of the original debt incurred in the joint enterprise shown by the averments of the complaint for which Gates was jointly liable with him. The averments show that four persons entered into the original joint enterprise, and appellee seeks only to recover from defendant the one-fourth part of the amount paid by Fauvre on account of the balance due on the original joint obligation. The complaint is clearly good as against the points suggested by the memoranda, and it therefore follows that the court did not err in overruling the demurrer thereto.

A proper understanding of the questions presented under the motion for a new trial requires us to notice the answers to the complaint. The first paragraph is a general denial. The second sets up the details of the transactions and shows that the debt of $40,000 mentioned in the complaint was assumed by the Marion Contract and Construction Company; that on August 13, 1907, Gates sold all his stock in said corporation to Moore and, by a written contract with Gates, Moore agreed that he would take up and pay all the obligations of said company on which Gates was liable as indorser, and that in case any of such obligations were renewed Gates was "to be released from any and all liability on said obligation or obligations"; that Fauvre knew of the sale of stock by defendant to Moore as aforesaid when

the sale was made and of the agreement of Moore to protect Gates from liability as above stated; that with such knowledge Fauvre entrusted the renewal of said notes to Moore without objecting to such arrangement and without notifying Bechtel, Fabel and Gordon not to accept said notes without the signature of Gates thereon. By reason of the facts so averred it is asserted that Gates was as a matter of law released from all liability. By the third paragraph appellant set up an express agreement by appellee to release Gates from all liability on the obligations aforesaid.

The fourth paragraph avers the details of all the transactions and is drawn on the theory that payment by Fauvre was voluntary and therefore that no right of contribution exists in his favor. In addition to the facts already indicated in this opinion, it is charged in the fourth paragraph that after Gates sold his stock to Moore, and after the maturity of the outstanding notes on which Gates was liable, Moore secured from the payees an extension of the time of payment of the debt and also secured from Bechtel, Fabel and Gordon, a release of Gates from all liability on such obligations; that thereafter renewal notes were given to said payees, executed by said Marion Construction Company as principal in the place of Moore, and with Moore as an indorser in the place of Gates, and with the signatures of both Fauvre and Elliott thereon; that neither Fauvre nor Elliott knew that Gates was to be so released and did not consent thereto, but executed said renewal notes as indorsers or sureties with the understanding that Gates was in like manner to join in the execution of the notes with them; that said notes were delivered and accepted by said payees without the signature of Gates thereon, in full acquittance and satisfaction of the amount due upon the former notes for which the notes so executed without the signature of Gates were given

as renewals; that thereby Fauvre and Elliott were released from any and all liability; that suit was brought by said payees upon said notes in the circuit court of the United States against Fauvre and Elliott; that said defendants filed separate answers in said case in which they averred the facts aforesaid to show that they were released from all liability on said notes; that such answers were held good, and thereafter, notwithstanding such fact, Fauvre voluntarily compromised, adjusted and paid the said debt, claim and notes to said Bechtel, Fabel and Gordon.

The evidence is conflicting as to whether there was an express agreement to release Gates as alleged in the third paragraph of answer. In such situation the finding of the trial court is binding and conclusive on appeal, and we shall give no further consideration to the question.

Two main propositions remain for our consideration, viz.: (1) Did the assumption of the debt by the construction company and the subsequent acceptance of renewal notes, without the signature of Gates, executed as alleged in the second paragraph of answer, in law, operate as a release of Gates from all liability? (2) Was Fauvre legally bound for the debt paid by him, or was such payment purely voluntary on his part? Appellant makes affirmative answer to each of such questions, and appellee contends that the undisputed facts of the case, under the law, compel a negative answer to each question.

The material facts averred in the second paragraph of answer are not seriously controverted, but appellant and appellee differ widely as to their legal effect. The undisputed evidence also shows that the Marion Contract and Construction Company was a corporation duly organized under the laws of Kentucky; that prior to the sale of stock by Gates to Moore all the stock of said

company, amounting to $100,000, was held in equal amounts by Gates, Elliott, Moore and Fauvre; that after the aforesaid sale to Moore a Mr. Netherland was associated with Moore; that, in the contract between Gates and Moore, Netherland was named as a third party, or guarantor for Moore to Gates, for the faithful performance of the provisions of such contract; that Netherland thereafter took the place of Gates in certain transactions, and in the execution of certain notes connected with the business of the construction company, which facts were known to Mr. Fauvre; that the notes for $40,000 due Bechtel, Fabel and Gordon, were executed by Moore as principal and indorsed by Gates, Fauvre and Elliott, but with the express agreement between them that each of said four persons should be equally liable for the debt; that some subsequent renewals were executed in the same manner, and in some instances all four signed the renewal notes as principals; that Moore at all times had charge of arranging for renewals and the execution of notes for that purpose; that Gates joined in all renewals to Bechtel, Fabel and Gordon, except the last, which were the notes in controversy paid by Fauvre.

The name of the construction company was not on any of such renewal notes except the last, and was not on these notes when the same were signed by Fauvre and Elliott. Fauvre did not know that the notes signed by the construction company as principal and by Moore, Elliott and himself as indorsers, had been so executed when the same were delivered to Bechtel, Fabel and Gordon by Moore, nor did he ascertain such to be the fact until suit was brought on the notes in the circuit court of the United States. When Fauvre and Elliott signed the last renewal notes in November, 1907, no other names than theirs and Moore's were on such notes, and the same were given to Moore with instructions by

Elliott and Fauvre to secure the other or fourth name as indorser before delivering the notes to the payees and taking up the old notes.    Fauvre and Elliott did not know Moore intended to have the construction company sign the notes and leave Gates' name off, and would not have delivered the notes to Moore had they known he intended so to do.    Moore was president of the construction company.    In August, 1907, Gates sold all his stock in the construction company to Moore, and on August 17, 1907, he sold all of his preferred stock in the Louisville and Eastern Railroad Company to Fauvre and Elliott, both of which transactions were prior to the time of the execution of the last renewal notes paid by Fauvre.    The notes were so paid on June 6, 1910, in the sum of $13,484.61.

While the evidence shows that the construction company assumed the debt of $40,000, it also shows that Gates, Moore, Elliott and Fauvre owned all the stock of the company, and that it was organized in conformity with and as a part of their original plan, and was a part of the means by which they sought to carry out their joint adventure.    While it is shown, as averred in the second paragraph of answer, that Fauvre knew of the purchase of Gates' stock in the company by Moore and of Moore's agreement to release Gates or save him from loss as indorser on the outstanding notes which the construction company had assumed and agreed to pay, yet the evidence does not conclusively show that Fauvre ever agreed or consented to the release of Gates, and wholly fails to show any consideration moving to Fauvre for such alleged release, for as between Gates and his co-obligors, other than Moore, the contract of sale afforded no consideration for the release of Gates and did not change their existing relations or obligations.    If we should hold that there is evidence tending to show each of the facts of

consideration and consent, or that there is evidence from which such ultimate facts may be inferred, such holding would not justify a reversal of the judgment, for the finding of the trial court is·a finding against the existence of such facts, and is conclusive on appeal. The assumption of the debt by the construction company and the execution and acceptance of the renewal notes paid by Fauvre, as averred in the second paragraph of answer, did not in law release Gates from his original obligation in so far as his co-obligors were concerned. Moore's liability to Gates under his contract of sale is not involved in this proposition.

The defense set up under the second paragraph of answer fails because it is devoid of a valid consideration for the alleged release of Gates. Were the sufficiency of the answer before us, we should be compelled to hold it insufficient in law for want of a consideration for the alleged release of Gates. The finding of the court as to the second paragraph of answer is sustained by sufficient evidence and is in effect a finding that the defense set up in that paragraph of answer fails because the evidence does not prove a consideration for the release of·Gates, and likewise fails to show the consent of Fauvre to such release, both of which are ultimate, material facts, essential to the maintenance of such alleged defense of release. Neither the facts pleaded nor the evidence show a novation. *Davis* v. *Hardy* (1881), 76 Ind. 272, 274; *Pope* v. *Vajen* (1889), 121 Ind. 317, 320, 22 N. E. 308, 6 L. R. A. 688; *Jeffries* v. *Lamb* (1880), 73 Ind. 202, 207; *Kelso* v. *Fleming* (1885), 104 Ind. 180, 182, 3 N. E. 830; *McClellan* v. *Robe* (1884), 93 Ind. 298, 301; *Ditmar* v. *West* (1893), 7 Ind. App. 637, 639, 35 N. E. 47; *Cates* v. *Seagraves* (1914), 56 Ind. App. 486, 488, 105 N. E. 594; *Walls* v. *Baird* (1883), 91 Ind. 429, 433; 34 Cyc 1045-1050.

The averments of the fourth paragraph of answer as

to the suit on the notes, the answers filed to the complaint, the rulings of the court holding the answers good, the subsequent dismissal of the suit and payment of the debt by Fauvre are not controverted, but are admitted to be substantially as alleged. The evidence also shows that after the payees had received the last renewal notes, on November 22, 1907, H. H. Bechtel, one of such payees, wrote Mr. Moore from Cincinnati, addressing him at Louisville, Kentucky, as follows:

"Dear Sir:
Returning from an absence, I find your favor of the 15th inst. enclosing notes as stated. I see you have substituted another name for Mr. Gates, left off. I enclose herewith order for Third National Bank your city to deliver to you the notes held by them for collection.
"Yours Truly,
"H. H. Bechtel."

The original debt of $40,000 to Bechtel, Fabel and Gordon was paid by the construction company except the amount evidenced by the last renewal notes, which were paid by Fauvre under the circumstances shown above.

Appellee contends that the facts in this case show that Fauvre was still liable on the renewal notes, notwithstanding the payees accepted them knowing Gates' name had been left off, and that, notwithstanding the ruling of the United States Circuit Court on such answers, a trial would have developed in that court substantially the same facts as those found sufficient in the trial of the case at bar.

By trusting Moore to secure the other signature and to deliver the renewal notes to the payees, Fauvre and Elliott made him their agent, and as between 6. them and the payees they were bound by his subsequent acts in relation to such notes, notwithstanding the violation of his instructions, since there is

no evidence tending to show that the payees had any knowledge or notice of the instructions given Moore or his violation thereof. *Whitcomb* v. *Miller* (1883), 90 Ind. 384; *Galvin* v. *Syfers* (1899), 22 Ind. App. 43, 46, 52 N. E. 96; *Johnson* v. *Harrison* (1912), 177 Ind. 240, 250, 97 N. E. 930, 39 L. R. A. (N. S.) 1207; *Bobbit* v. *Shryer* (1880), 70 Ind. 513, 516.

But the undisputed evidence shows that the payees accepted the renewal notes executed in November, 1907, long after the maturity of the notes for which they were given as renewals, with knowledge of the facts that the construction company was the principal on such notes and that Gates, one of the indorsers of the former notes and all previous notes executed to them, had not joined in the execution of such renewal notes. The evidence also shows without controversy that notwithstanding such information the payees voluntarily surrendered to Moore the notes on which Gates was liable, and that, upon failure of the principal to pay the notes at maturity, the payees instituted suit thereon in the circuit court of the United States against Fauvre and Elliott, and that thereafter the amount due on such notes was paid by appellee, without a judgment having been rendered against him.

Appellant contends that these facts authorize no other inferences or conclusions other than the ultimate facts that the payees of said notes accepted the last renewal notes in full payment and satisfaction of the debt evidenced by the notes surrendered as aforesaid; that they thereby released Gates from liability upon the joint obligation into which he had entered, and that such release, in law, operated likewise as an absolute release of Fauvre and Elliott from all liability to such payees.

Appellee contends that the facts above set out do not evidence a release of Gates from the original joint obligation to which he was a party; that notwithstanding

the surrender of the notes on which Gates was jointly liable with the other indorsers, and the acceptance of the renewal notes as aforesaid, the payees could have sued and recovered upon the original joint obligation to which Gates was a party; that at most the facts only evidence an intention not to sue Gates, which in law cannot operate to release the other joint obligors.

A release is a discharge, under seal or by contract, of an existing obligation or right of action by the person in whom the obligation or right of action is

7. vested to the person so obligated or against whom such right of action might be enforced. It is a contract, and when not under seal must be shown to be supported by a sufficient consideration. Such consideration may be some detriment to the releasee, or some benefit to the releasor moving from the releasee, or from some one in his behalf. A consideration moving from a third person on behalf of the releasee to the releasor, or from the releasee to a third person at the request or by the acquiescence of the releasor is as adequate as a consideration moving directly from the releasee to the releasor. Where the consideration or arrangement out of which the consideration arises is of such a character that it requires the exercise of judgment to determine its value, and the parties, uninfluenced by fraud or deception, have determined its sufficiency, courts will not review their decision. *Cates* v. *Seagraves, supra;* 34 Cyc 1042, 1048, 1050; 24 Am. and Eng. Ency. Law 283, 287.

The absolute release of one of several joint debtors by the payee of the obligation operates as a release of all of such joint obligors. *Thomas* v. *Wilson*

8. (1842), 6 Blackf. 203; *Paul* v. *Logansport Nat. Bank* (1877), 60 Ind. 199, 201; *Stockton* v. *Stockton* (1872), 40 Ind. 225, 227; *Aylesworth* v. *Brown* (1869), 31 Ind. 270, 276; 34 Cyc 1080-1084; 24 Am.

and Eng. Ency. Law 303, 304; 1 Parsons, Notes and Bills 247.

A release being a contract, the primary rule of construction is that the intention of the parties must govern. The intention is to be gathered from the instrument when the release is in writing, and from the facts, circumstances and relations of the parties when the release relied upon arises by operation of law. To enable the court to properly construe a release where it is ambiguous, extrinsic evidence is admissible to explain the circumstances under which it was executed, or the facts and transactions relied upon to show the release, when it is not evidenced by a written instrument. 34 Cyc 1075; 24 Am. and Eng. Ency. Law 290; *Rowe* v. *Rand* (1887), 111 Ind. 206, 211, 12 N. E. 377; *Walls* v. *Baird, supra.*

To avoid hardships and inequitable results not intended by the parties, courts in some instances have construed ambiguous releases as agreements not to sue the party released, and refused to give to such instruments or arrangements the effect of releasing other joint obligors. In some instances agreements not to sue one of several joint obligors at any time have been given the effect of an absolute release of such obligor, with the results attendant upon such release. Such phases of the doctrine of release or agreements not to sue have not been passed upon by the courts of Indiana, but the decisions of this state are in accord with the generally prevailing doctrine which emphasizes the importance of ascertaining and following the intention of the parties when it can be done without violence to the language employed where the alleged agreement is in writing, or without disregarding the plain intention of the parties, at the time of the transactions involved, as evidenced by their conduct in relation thereto. *Aylesworth* v. *Brown, supra; Walls* v. *Baird, supra;* 34 Cyc 1084; 24 Am. and

Eng. Ency. Law 292, 293; 1 Parsons, Notes and Bills
250; *Line & Nelson* v. *Nelson & Smalley* (1876), 38 N.
J. L. 358, 360; *Parmelee* v. *Lawrence* (1867), 44 Ill.
405, 413.

Applying these principles of law to the facts alleged
in the fourth paragraph of answer and the undisputed
evidence, it appears without question that Moore
intended to secure the release of Gates from all
liability as indorser on the notes held by Bechtel,
Fabel and Gordon.    The payees accepted from him the
notes, executed in November, 1907, by the construction
company as principal, Moore being president of the com-
pany, and by Moore, Fauvre and Elliott as indorsers,
without the signature of Gates appearing thereon.    The
evidence also shows, without controversy, that the
change in parties was known to the payees, and that
they voluntarily surrendered the notes on which Gates
was liable for the notes which he did not execute, and
that upon default in payment they instituted suit upon
the notes so accepted by them.    These facts show that
the payees cooperated with Moore, and so far as their
interests are concerned did release Gates from liability
on the notes payable to them.    It follows that the only
right of action of such payees was upon the notes held
by them.

But it does not necessarily follow from such facts that
Fauvre and Elliott were likewise relieved from all liabil-
ity, or that Fauvre's payment of the debt was
voluntary and gave him no right of contribution.

The release of Gates resulted from Moore's
violation of the instructions given him by Fauvre and
Elliott and the acceptance of the renewal notes and the
surrender of the old notes by the payees.    The implied
authority of Moore, as agent of Fauvre and Elliott, in
the absence of notice to or knowledge on the part of the
payees to the contrary, was sufficient to bind Fauvre

and Elliott by his acts in delivering the notes signed by them, in so far as their liability to the payees is involved. While he in fact had no such authority, they were responsible for his apparent authority, and up to the point of the delivery to the payees of the notes so signed as aforesaid the transaction was in law the same as if Fauvre, Moore and Elliott had acted jointly and had personally delivered the notes to the payees.

But Moore had no authority from Fauvre and Elliott, either express or implied, to release Gates, or to change the existing relations between them. Their relations and liabilities were fixed by what had previously transpired, and could not be changed without the consent of all the parties either expressed or implied. They were jointly liable for the debt evidenced by the several notes executed to Bechtel, Fabel and Gordon, and the acceptance of the last renewal notes by the payees, under the circumstances shown, did not change the relation or liability of Fauvre, Elliott and Gates as between themselves. *Davis* v. *Hardy, supra; Bristol Milling, etc., Co.* v. *Probasco* (1878), 64 Ind. 406, 413; *Clark* v. *Billings* (1877), 59 Ind. 508, 509; *Todd* v. *Oglebay* (1902), 158 Ind. 595, 599, 64 N. E. 32.

The evidence conclusively shows that Fauvre and Elliott did not know that Gates' name was left off the notes and that the construction company had signed the notes as principal. Fauvre and Elliott therefore did not consent to the release of Gates, the substitution of the construction company as principal, or to the surrender of the old notes under the conditions shown, and are only bound to the extent of the implied authority given Moore to act as their agent. Consent of all the parties to the new arrangement is not shown, and it therefore does not amount to a novation. *Bristol Milling, etc., Co.* v. *Probasco, supra; Rusk* v. *Gray* (1882), 83 Ind. 589, 591; *McClellan* v. *Robe, supra*.

The general rule is that the acceptance of a note, negotiable under the law merchant, is *prima facie* payment of a pre-existing debt, though the parties may by contract provide otherwise. The acceptance of a nonnegotiable note is not presumed to be payment of a pre-existing debt, and is not of itself evidence of payment, though it may be shown to have been so intended and accepted. The intention of the parties is the controlling element, and when the question is in issue such intention may be ascertained from any competent evidence either direct or circumstantial. *State, ex rel.* v. *Adams* (1918), 187 Ind. 165, 118 N. E. 680; *Scott* v. *Edgar* (1902), 159 Ind. 38, 41, 63 N. E. 452; *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 511, 55 N. E. 434; *Nixon* v. *Beard* (1887), 111 Ind. 137, 141, 12 N. E. 131; *Teal* v. *Spangler* (1880), 72 Ind. 380, 382; *Jeffries* v. *Lamb, supra.*

The renewal notes in controversy were executed in November, 1907, and were payable at the Third National Bank of Louisville, Kentucky. Not being payable at a bank in the State of Indiana, they are not negotiable under the statutes of this state, then in force. §9076 Burns 1914, §5506 R. S. 1881; §9089b7 Burns 1914, Acts 1913 p. 120 *et seq.*

Whether such notes are negotiable under the law merchant of the State of Kentucky does not appear. Being payable at a bank in that state, their negotiability is determined by the laws of that state. What the laws of that state are on the subject cannot be legitimately known in this case, for the reason that the court does not take judicial knowledge of such laws, and the same have neither been pleaded nor proved, which would be necessary to properly bring them before this court. In this situation we must presume that the common law prevails in Kentucky. "The *lex mercatoria*, the law merchant, is a part

of the common law, and governs bills of exchange, * * * but the *lex mercatoria* did not, at common law, apply to promissory notes." *Patterson* v. *Carrell* (1877), 60 Ind. 128, 130, 131; *Mix* v. *State Bank* (1859), 13 Ind. 521; *Hunt* v. *Standart* (1860), 15 Ind. 33, 34, 77 Am. Dec. 79; *Ray* v. *Baker* (1905), 165 Ind. 74, 89, 74 N. E. 619; *Midland Steel Co.* v. *Citizens Nat. Bank* (1904), 34 Ind. App. 107, 113, 72 N. E. 290.

For the purposes of this case, at least, it follows that the renewal notes in controversy are not negotiable under the law merchant. The acceptance of such 17. notes is not evidence of payment of the preexisting debt for which the notes were given. There is no evidence tending to show that they were intended as payment of the debt. Such being the case, the presumption prevails that they were not intended as payment of the pre-existing debt. It follows, therefore, that the debt for which Gates was jointly liable was not paid until Fauvre paid it. When Fauvre paid the debt his right of contribution was complete against Gates.

But, independent of the question of the negotiability of the notes, we think Fauvre's right of subrogation is upheld by the principles of equity applicable to 18. the case. Equity regards that as done which as a matter of right and justice should have been done. Gates had participated in the joint enterprise with Fauvre, Elliott and Moore up to the time of the execution of the last renewal notes. He should have signed those notes, or by due consent of all the interested parties obtained a legal discharge from liability. There is no room for doubt in this case that it was the original intent of the four persons above named to assume equal parts of the burdens and liabilities of their joint enterprise, and to enjoy equal benefits derived therefrom. The deal which Gates made with Moore

did not change his relations to his other joint obligors. Equity looks to the intent, rather than to the form. It takes into account substance and facts, and disregards mere appearances or external forms, and seeks to uphold and enforce rights and duties which spring from the real relations of the parties. 1 Pomeroy, Equity Juris. (3d ed.) §§363, 364, 365, 368, 378, 380.

Contribution originated in equity and is based on natural justice. It is generally held not to rest upon contract expressed or implied. It applies where equity between the parties requires equality of burden. It is the mode by which equity compels the ultimate discharge of a debt by the one who as a matter of right should pay it. Sheldon, Subrogation (2d ed.) §§1, 11; 1 Pomeroy, Equity Juris. (3d ed.) §§405, 409.

Text-writers and many decisions of this court and of our supreme court have declared the principle broad enough to include every instance in which one party, not a mere volunteer, pays a debt for another, who was primarily liable therefor, and which in equity and good conscience the latter should have paid. When equity is invoked it brushes aside mere forms and technicalities and pursues the actual relations of the parties to the final culmination thereof, and determines liability, or freedom therefrom, according to the principles of right and justice between the parties. He who seeks the aid of equity must do equity and come into court with clean hands. The undisputed fact is that Fauvre paid the whole debt for which the four joint adventurers were liable. Had the debt been paid by them at the time of the last renewal as between the original obligors, each should have paid the one-fourth thereof. Gates has only been held liable for one-fourth part of the amount of that debt, and he therefore cannot complain of the amount if liable at all. As above shown, Fauvre was legally liable to the payees of the last renewal notes.

He was not therefore a mere volunteer when he paid the debt evidenced by those notes. Fauvre had never consented to the release of Gates, nor had he received any consideration for his alleged release. He did nothing to place Gates in a position of disadvantage. Gates remained in the same relative position as to Fauvre and Elliott that he assumed when they entered upon their joint enterprise.

Gates was not misled or deceived by what was done. Fauvre's mere knowledge of Moore's contract with Gates to save him harmless by reason of his indorsement of outstanding notes could not bind him. Gates is not in a position to base any claim of hardship on the extension of time secured after he sold his stock and made his contract with Moore, for in that contract he contemplated extensions of time on the notes on which he was indorser, and also sought to further protect himself by the guaranty contract of Mr. Netherland.

The contract provides:

"That all obligations of the Marion Contract and Construction Company on which the said party of the first part is liable as endorser are to be taken up and paid by the party of the second part, and if any of said obligations at any maturity thereof shall be renewed by the party of the second part, then in that event the name of the party of the first part is to be released from any and all liability on said obligation or obligations."

Gates did not by such contract with Moore and Netherland take himself out of the realm of possible liability, for in the event the construction company failed to pay, and both Moore and Netherland failed to make good their obligations to him, his situation and relation remained unchanged, except as to the right of action against Moore and Netherland accruing to him by reason of the aforesaid contract.

To release Gates from all liability under such circum-

stances would be inequitable. The parties originally assumed equal parts of the burden, and there is nothing to indicate that they did not share equally in the benefits of their joint enterprise.

In view of the facts of this case and the finding of the court, we cannot hold as a matter of law that the payment made by Fauvre was voluntary, or that Gates was discharged from all liability by the acceptance of the renewal notes under the circumstances above shown. *Thompson* v. *Connecticut, etc., Ins. Co.* (1894), 139 Ind. 325, 344, 346, 38 N. E. 796; *Norris* v. *Churchill, supra; Nelson* v. *McKee* (1913), 53 Ind. App. 344, 348, 99 N. E. 447, 101 N. E. 651, and cases cited; *American Fidelity Co.* v. *East Ohio, etc., Co.* (1913), 53 Ind. App. 335, 340, 101 N. E. 671; *Mortgage Trust Co.* v. *Moore* (1898), 150 Ind. 465, 478, 50 N. E. 72; *Warford* v. *Hankins* (1898), 150 Ind. 489, 493, 50 N. E. 468; *Dessar* v. *King* (1887), 110 Ind. 69, 72, 10 N. E. 621; *Cook* v. *Cook* (1884), 92 Ind. 398, 401; *Binford* v. *Adams* (1885), 104 Ind. 41, 42, 3 N. E. 753; III Pomeroy, Equity Juris. §§1418-1419; 37 Cyc 363 *et seq.;* 27 Am. and Eng. Enc. Law p. 202 *et seq.*

Other questions suggested are not of controlling importance.

The decision of the court is sustained by sufficient evidence. The case seems to have been fairly tried on its merits and a correct result reached.

No intervening error affecting any substantial right of appellant has been shown.

Judgment affirmed.

Ibach, C. J., Batman, P. J., Caldwell and Hottel, JJ., concur. Dausman, J., dissents.